Patsy KAVA, as personal representative of the Estate of Abner T. Gologergen, Appellant,

v.

AMERICAN HONDA MOTOR CO., INC., Honda Motor Co., Ltd., and Sitnasuak Native Corp., d/b/a Bonanza, Appellees.

No. S–9201.

Supreme Court of Alaska.

June 14, 2002.

Rehearing Denied July 8, 2002.

Richard H. Friedman, and Jeffrey A. Friedman, Friedman, Rubin & White, and Don C. Bauermeister, Burke & Bauermeister, PLLC, Anchorage, for Appellant.

Sanford M. Gibbs, Brown, Waller & Gibbs, P.C., and John B. Thorsness, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, and BRYNER, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Patsy Kava, as the personal representative of the estate of Abner Gologergen, appeals from a jury verdict in a wrongful death defective products action resulting from a three-wheel ATV accident. The estate claims that the superior court erred in allowing Honda to introduce comparative risk evidence, in not allowing the estate to inform the jury of an indemnity agreement between two co-defendants, and in not granting a motion for a new trial. Because the superior court correctly ruled that the comparative risk evidence was admissible and did not abuse its discretion in excluding the indemnity agreement, we affirm in part. But because the court incorrectly determined the effect of its sua sponte declaration of a mistrial on the negligence cause of action and applied the wrong standard in denying the estate's motion for a new trial, we reverse in part.

## II. FACTS AND PROCEEDINGS

Abner Gologergen was driving a Honda three-wheel ATV to the site of a beached whale near Savoonga when he lost control, drove over a rocky embankment, and suffered fatal head injuries. Gologergen's estate filed a wrongful death action against American Honda Motor Company (Honda) and Sitnasuak Native Corporation, alleging a defective product design and negligence.[1]

The estate claimed five dependents: Patsy Kava, an estranged biological daughter, Aaron and Eleanor Gologergen, an adult nephew and his wife, and Stephanie and Brianne Gologergen, Aaron and Eleanor's minor daughters.

All parties stipulated that Sitnasuak had no independent liability for any negligence because it was simply a conduit for Honda's product. Honda agreed to indemnify Sitnasuak against any judgment, and Sitnasuak consented to representation by Honda.

Prior to trial, the estate moved to exclude any "evidence comparing, or designed to compare, the risks of engaging in the activity of riding ATVs, or 3-wheel ATVs, and the risk of engaging in other activities such as riding snowmachines, trail bikes or bicycles." The superior court granted the motion but made one exception:

> if evidence of certain Consumer Product Safety Council reports and findings [is] presented by the plaintiff in his case in chief. In that event, the risk analysis prepared by Dr. Verhalen may be admitted as rebuttal, to impeach the methodology and statistical analysis performed.

Also prior to trial, the estate offered a proposed instruction informing the jury of the indemnity agreement between Honda and Sitnasuak. Honda objected to the instruction at the start of the trial, and the superior court excluded it.

In opening argument, the estate's attorney recited statistics compiled by the Consumer Product Safety Commission regarding emergency room admissions and deaths attributed to ATVs—the statistical studies that the su-

---

1. Sitnasuak is the village corporation of Nome that sold the Honda ATV to Gologergen through its business, "Bonanza."

perior court referred to in its pretrial order excluding comparative risk evidence. Honda objected to the estate's use of those statistics as being prejudicial and out of context. The superior court overruled the objection.

In its case in chief, again over Honda's objection, the estate presented evidence of the CPSC studies. Then, over the estate's objection, the trial court allowed Honda to introduce certain comparative risk evidence that otherwise would have been excluded under its pretrial order. Later, again over the estate's objections, the court allowed Honda to introduce several exhibits that illustrated the comparative risks between ATVs and other classes of vehicles, including snowmobiles, minibikes, and trailbikes.

At the conclusion of the trial, the jury began deliberating but deadlocked on the negligence cause of action. The jury's foreperson sent a note to the court stating, "We have debated and voted on question # 4 since yesterday afternoon. We have not been able to move beyond an 8–3 vote on this question. Please advise." Question four stated "Was Honda negligent? (Answer yes or no)." In attempting to formulate a response to the jury note, the trial court suggested that it should declare a mistrial as to the negligence cause of action and direct the jury to answer the remainder of the special verdict as to the products liability cause of action. The estate did not believe that a mistrial was necessary on this negligence claim but agreed with the trial court's suggestion to instruct the jury to answer the remaining special verdict questions. Honda objected and moved for a mistrial on all points.

The court denied Honda's motion for a mistrial on the entire case but declared a mistrial on the negligence claim, instructing the jury to skip questions four and five (which dealt with negligence) and to continue answering the verdict form with question six. The jury reached a verdict as to the remaining issues, which dealt with the estate's product liabilities theory. It found that the

three-wheel ATV was a defective product and that it was a legal cause of Gologergen's death. The jury also found that Aaron, Eleanor, Stephanie, and Brianne Gologergen were legal dependents of Abner Gologergen. But it awarded zero damages to Aaron and Eleanor, and $25,000 each to Stephanie and Brianne only for the loss of consortium. Further, despite finding that Patsy Kava was Abner Gologergen's biological daughter, the jury awarded her zero damages. It also found that Abner Gologergen was negligent and that his negligence was fifty percent of the cause of his death. Finally, the jury found that Honda had not engaged in outrageous conduct; this finding precluded an award of punitive damages.

After the jury's verdict was read into the record, the estate's counsel asked that the jury be polled, but did not challenge the verdict when the poll was completed. The court then dismissed the jury. The estate later moved for a new trial on all issues. The superior court denied the estate's motion. The estate appeals.

## III. ANALYSIS

### A. Standard of Review

 We review a trial court's decision to admit evidence for an abuse of discretion.[2] The question of whether to grant or refuse a new trial "rests in the sound discretion of the trial court."[3] In reviewing an order denying a new trial, we view the evidence in the light most favorable to the non-moving party.[4] Whether the trial court applied the correct legal standard is a question of law that we review de novo.[5]

### B. The Comparative Risk Evidence Was Admissible.

 The estate asserts that the trial court erroneously allowed Honda to introduce evidence comparing the risks of riding three-wheel ATVs to the risks of operating other vehicles like snowmachines and motorcy-

---

**2.** *Hutchins v. Schwartz,* 724 P.2d 1194, 1197 (Alaska 1986).

**3.** *Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 442 (Alaska 1989).

**4.** *Pugliese v. Perdue,* 988 P.2d 577, 581 (Alaska 1999).

**5.** *Power Constructors, Inc. v. Taylor & Hintze,* 960 P.2d 20, 39 (Alaska 1998).

cles—so-called comparative risk evidence.[6] The estate points out that the trial court had issued a protective order excluding the comparative risk evidence unless it was used to impeach certain Consumer Product Safety Commission reports. The estate argues that the evidence is irrelevant and that its admission amounted to reversible error. We disagree. The comparative risk evidence the estate complains of was relevant and admissible for two reasons.

First, the estate made the evidence relevant when it introduced evidence of ATV-related emergency room admissions. The estate first mentioned the emergency room statistics in its opening statement. The estate's trial counsel stated in opening that "[b]y 1984, over 100,000 people had been taken to emergency rooms as a result of injuries in 3–wheel accidents. Over 250 people had been killed.... [Honda] knew it had an unstable machine on its hands. It knew it from the [Consumer Product Safety Commission] statistics." Over Honda's objection, the estate later introduced the CPSC statistics as evidence that Honda had notice of injuries resulting from the use of its three-wheel ATVs. The estate also recounted the statistics in its closing argument.

Honda asserts that it introduced the comparative risk evidence to explain the CPSC statistics and to "prove that the statistics relied upon by [the estate's expert witness] were inaccurate and irrelevant." We agree that Honda's comparative risk evidence was relevant to refute the estate's statistical evidence and to impeach its expert's testimony regarding those statistics. As we recently stated, "a party may open the door to evidence on a subject by putting that subject at issue in the case."[7] Here, the estate opened the door to a discussion of the statistical methodology behind the CPSC reports.[8]

The emergency room statistics that the estate chose to present were relevant to establish notice only insofar as they suggested a disproportionally high rate of injury and, inferentially, a defective product. By offering the injury statistics as relevant evidence of notice, the estate necessarily asserted that they tended to show that ATVs were defective—that Honda "knew it had an unstable machine on its hands." How else, then, could Honda have contextualized the rates of emergency room admissions without comparing the ATV injury rates with similar products? The statistics of ATV-related emergency room admissions, standing alone, could not explain the reasons for the reported injuries or establish the need for a corrective response by Honda. Honda was therefore entitled to offer the comparative risk evidence in response to the estate's use of the CPSC statistics.

Second, the comparative risk evidence was also admissible because it played an important role in connection with the issue of punitive damages. The estate's theory of punitive damages was that Honda continued to market three-wheel ATVs knowing that the three-wheelers had a high rate of injury. It based its theory in large part on the fact that Honda had notice of the CPSC emergency room statistics as early as 1984 but continued to market three-wheel ATVs. The estate asserted that the continued marketing in the face of the injury statistics showed that Honda's conduct was sufficiently reprehensible to support punitive damages. Honda's comparative risk evidence directly responded to the estate's theory of punitive damages.

We conclude that the superior court did not abuse its discretion in admitting the comparative risk evidence.

## C. The Effect of the Mistrial.

The estate argues that it should have been granted a new trial on its negligence cause of

---

6. The disputed evidence was admitted during Honda's cross-examination of one of the estate's expert witnesses, former CPSC commissioner Stuart Statler, through testimony by three Honda witnesses and through nine comparative-risk exhibits introduced when these witnesses testified.

7. *Loncar v. Gray*, 28 P.3d 928, 932 (Alaska 2001).

8. *See Bittner by Bittner v. American Honda Motor Co.*, 194 Wis.2d 122, 533 N.W.2d 476, 487 (1995) (holding that the trial court properly admitted defendant's comparative risk evidence for the purpose of impeaching the CPSC's statistical analysis because the evidence demonstrated that the CPSC's statistical basis, relied on by the plaintiff, could be defective).

action because the trial court sua sponte declared a mistrial on that claim and allowed the jury to reach a verdict only on the estate's products liability claim. In response, Honda notes that the special verdict form allowed the jury to award the same categories of damages for both causes of action. According to Honda, the products liability and negligence theories were alternative causes of action, and the jury's verdict on the products liability claim therefore resolved all damages issues, leaving no reason for trial on the alternative theory of negligence. Honda additionally argues that, in any event, the estate waived its right to ask for a retrial on negligence.

As a threshold matter, we agree with the estate that the trial court acted sua sponte in declaring a hung jury and mistrial on the negligence claim. Upon receiving the foreperson's note that the jury had debated for eight hours and failed to reach a verdict on the negligence issue, the trial judge stated: "I think the indication, they spent eight hours at it and there has been no change . . . [j]ustifies a finding that, as to the issue of the negligence claim, there is a mistrial." In response to concerns by Honda's trial counsel, the court later expressly confirmed that it had issued the mistrial order by "motion of the court." Because the judge declared the mistrial without a motion from either party, we believe that the finding of a mistrial can only be characterized as sua sponte.

■ We reject Honda's assertion that the estate waived its right to a retrial on the negligence cause of action by supporting the trial court's decision to declare a mistrial on that action. The estate did acknowledge that the jury appeared to be deadlocked on the negligence claim at that point; but it declined to move for a mistrial or to adopt the position that it would relinquish its right to seek a retrial on the mistried negligence claim. While it may be true that the trial court could have required the estate to elect between a mistrial on all issues and a waiver of its negligence cause of action, the court did not require such an election. Instead, it simply opted to declare a mistrial sua sponte. Given these circumstances, we hold that the estate's actions cannot properly be construed as a waiver of the right to a retrial.

■ This conclusion leads us to a slightly more vexing question: whether the trial court's sua sponte mistrial order entitles the estate to retry its negligence claim. As Honda correctly observes, the special verdict form for the products liability and negligence causes of action listed identical categories of damages for both claims, and the jury's verdict on the products liability cause of action assessed the damages that the jury found appropriate in each category. The question, then, is whether, under the evidence presented, the estate realistically might have recovered any additional award for the same categories of damages had the jury not deadlocked on the negligence cause of action.

The estate's dual claims for negligence and products liability were independent causes of action in the sense that they were sufficiently distinct and separable to stand alone. Yet most of their shared categories of damages were obviously coextensive. For example, the damages for "past loss of support and services" and "future loss of support, services and inheritance" would be identical regardless of the theory under which they were awarded. Because these damages have already been decided by the jury in the products liability verdict, it would be an injustice to subject Honda to the expenses and risks of redetermining those damages in a retrial.[9]

Similarly, the issue of punitive damages was essentially identical for both causes of action; on each claim, the jury was required

---

9. *See Sturm, Ruger & Co. v. Day*, 615 P.2d 621, 624 (Alaska 1980). As mentioned in the statement of facts, despite its finding that Aaron, Eleanor, Stephanie, and Brianne Gologergen all were legal dependents of Abner Gologergen, the jury awarded loss of consortium damages only to Stephanie and Brianne, awarding nothing to Aaron and Eleanor. These verdicts are arguably inconsistent, and their potential inconsistency could conceivably cast doubt on the reliability of the award of zero damages to Aaron and Eleanor. But in our view the estate's failure to challenge the verdict as inconsistent before the trial court discharged the jury precludes the estate from relying on this inconsistency as a legal basis requiring a retrial on either its negligence or product liability claims.

to determine whether Honda's conduct was outrageous and would therefore support punitive ·damages. The special verdict form contained a single question relating to both claims on punitive damages: "Have plaintiffs proven by clear and convincing evidence that Honda engaged in outrageous conduct? (Answer yes or no)." [10] The jury answered this question in the negative. Neither the jury instructions nor the evidence at trial differentiated between the kinds of conduct that would be outrageous under the estate's theories of negligence and products liability. Given these circumstances, the jury's finding that Honda had not engaged in outrageous conduct must be deemed to preclude an award of punitive damages under both causes of action.

As to all issues of compensatory and punitive damages, then, because retrying the negligence theory would merely allow the estate to relitigate issues that the first jury has already considered and fully decided, we conclude that no retrial is warranted. But one point remains to be considered: comparative fault. As to this point, we find it possible that a retrial on the estate's negligence theory could lead to a different result based on a new jury's consideration of factual issues that the original jury's verdict on products liability does not fully resolve.

Because a finding of comparative relative fault requires the jury to allocate relative degrees of fault among joint wrongdoers, there is good reason to believe that if the original jurors had found Honda liable on the basis of actual negligence rather· than strict products liability, they would have assessed greater comparative fault to Honda than they

did when they allocated fifty percent fault to Gologergen in response to .special verdict question 15. We thus conclude that a new trial will be necessary on the issue of comparative fault unless Honda agrees upon remand to accept full liability for the damages awarded by the original jury.

## D. The Motion for a New Trial.

The estate next argues that the trial court applied the wrong standard when it denied the estate's motion for a new trial. The estate claims that instead of viewing the evidence in the light most favorable to Honda, the trial judge should have determined the weight and credibility of the evidence for himself and decided whether the jury's verdict was "against the weight of the evidence." [11] The estate is correct.

 The standard for deciding a motion for a directed verdict or for a judgment notwithstanding the verdict requires a trial court to view the evidence in the light most favorable to the non-moving party.[12] By contrast, a trial court may set aside a verdict and order a new trial in the interest of justice if the verdict is against the weight of the evidence.[13] In deciding a motion for a new trial on this basis, the court must use its discretion and independently weigh the evidence.[14] A court may set aside a verdict as being against the weight of the evidence even when "there is substantial evidence to support it." [15] The decision is a matter for the trial court's discretion.

 In the present case, the estate moved for a new trial, not for a directed verdict or a judgment notwithstanding the

---

**10.** The punitive damages jury instruction stated:
 The plaintiff has requested that you punish the defendant to deter them and others from repeating similar acts. You may award the plaintiff such an amount of money only if you decide that the defendant's conduct which forms the basis of your verdict was outrageous. The defendant's conduct was outrageous if it was the result of maliciousness or hostile feelings toward the plaintiff, or was undertaken with reckless indifference to the interests, rights or safety of others.

**11.** We reject the estate's assertion that this court should declare as a matter of law that the jury's verdict was a compromise.

**12.** *See* Alaska R. Civ. P. 50(a) and (b); *Alaska Marine Pilots v. Hendsch,* 950 P.2d 98, 108 (Alaska 1997).

**13.** *See* Alaska R. Civ. P. 59(a); *see also Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 723 (Alaska 1975).

**14.** *See Sloan,* 541 P.2d at 723 n. 11.

**15.** 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2806 at 65 (2d ed.1995).

verdict. The trial court's order denying the estate's motion for a new trial shows that it applied the directed verdict standard. The trial court cited *Mallonee v. Finch*[16] in support of the proposition that, "[i]n deciding the motion [for a new trial], this court must view the evidence in the light most favorable to the party against whom the motion is made and draw all reasonable inferences in favor of the verdict." But, the trial court's citation to *Mallonee* refers to the portion of that opinion dealing with the appellate standard of review, not the standard to be applied by the trial court ruling on a motion for a new trial in the interest of justice.

As we explained in *Mallonee,* "[u]nlike a motion for directed verdict or judgment n.o.v., [the motion for new trial] involves the trial judge's discretion."[17] By moving for a new trial, and not just for a judgment notwithstanding the verdict, the estate sought a discretionary ruling from the court based on its personal view of the evidence. Although the estate bolstered its argument with the claim that the jury's verdict was flawed as a matter of law, this argument did not deprive it of the right to a decision based on the trial court's independent discretion. The trial court applied the wrong standard, then, in basing its decision on a view of the evidence in the light most favorable to Honda. The estate is entitled to a ruling on its motion for a new trial using the correct standard. On remand, the trial court should exercise its discretion and independently weigh the evidence in determining if the jury's verdict was against the weight of the evidence.

In reaching this conclusion, we reject Honda's assertion that the estate waived any right to a new trial by failing to challenge the jury verdict as legally inconsistent before the jury was discharged. We have held that "challenges to the consistency of a verdict are deemed waived unless made prior to the discharge of the jury."[18] But that rule has limited application here. The estate's failure to raise the issue of inconsistency before the court discharged the jury precluded it from later asserting that the inconsistency entitled it to a new trial as a matter of law. But that failure did not strip the estate of its right to move for a new trial on the discretionary ground that the verdict was against the weight of the evidence. Nor did the lack of objection bar the estate from arguing the apparent inconsistency of the verdicts as a factor that the trial court could consider in exercising its broad discretion to determine whether the totality of the circumstances warranted a new trial in the interest of justice.[19]

Accordingly, we remand for reconsideration of the estate's motion for a new trial. On remand, the trial court should use its discretion and independently weigh the evidence to determine whether the verdict is against the weight of the evidence and whether to order a full or partial retrial in the interest of justice.

### E. It Was Not an Abuse of Discretion to Exclude the Indemnity Agreement.

The estate claims that the trial court abused its discretion when it refused to instruct the jury on the indemnity agreement between Honda and Sitnasuak. That agreement made Sitnasuak a defendant in name only: Sitnasuak gave up its right to control the defense of the case and its cross-claims against Honda in exchange for Honda's agreement to indemnify Sitnasuak for any "conduit" liability.[20] Prior to trial, the estate

---

**16.** 413 P.2d 159, 160 (Alaska 1966).

**17.** *Id.* at 162.

**18.** *Grow v. Ruggles,* 860 P.2d 1225, 1226 (Alaska 1993); *accord Blumenshine v. Baptiste,* 869 P.2d 470, 473 (Alaska 1994).

**19.** *See* Alaska R. Civ. P. 59(a). Rule 59(a) provides that: "A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury ... if required in the interest of justice." *See, e.g., Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 442 (Alaska 1989).

**20.** The indemnity agreement stated in relevant part:

2. ... American Honda ... and defendant Sitnasuak hereby stipulate and agree that they hereby waive and will not seek apportionment of fault to co-defendant Sitnasuak, pursuant to

submitted a proposed jury instruction that would have informed the jury of the indemnity agreement.[21] The trial court declined to include the instruction. The estate again proposed the instruction at the beginning of trial, and it was again rejected.

Honda argues that the proposed instruction on the indemnity agreement was properly excluded because it would have been analogous to disclosing that a defendant is insured; as Honda points out, evidence of the availability of insurance is inadmissible.

We disagree with Honda's analogy to insurance. An insurance policy protects the insured from liability by contractually shifting the financial, but not the legal, responsibility to the insurer. The insurer therefore accepts the risk of liability without regard to its own conduct. By comparison, Honda's own conduct made it responsible for breaching a tort duty that it owed directly to Gologergen; its indemnity agreement simply required it to reimburse Sitnasuak—an otherwise innocent party—for any "conduit" liability that Sitnasuak might have incurred as a result of being involved in Honda's chain of distribution. Thus, unlike an insurer, Honda was the principal wrongdoer and agreed to indemnify Sitnasuak for inci-

dental liability that might arise from Sitnasuak's relationship with Honda. In effect, then, the agreement simply recognized that Sitnasuak had no real interest in the litigation.[22]

But regardless of the indemnity agreement's nature and purpose, the circumstances of this case compel us to conclude that the trial court did not abuse its discretion in excluding the estate's proposed jury instruction. As Honda correctly points out, the estate itself chose to join Sitnasuak as a defendant, even though the estate knew that under products liability law Honda would ultimately be responsible for any judgment.

The estate nevertheless cites *Frontier Companies of Alaska, Inc. v. Jack White Co.*,[23] for the proposition that indemnity agreements can be used under Alaska Evidence Rule 408 to "show the true alignment of the parties." [24] There, we held that it was not an abuse of discretion for the trial court to allow evidence of a settlement agreement between co-defendants where, "[b]ecause of the agreement, [one co-defendant's] representatives might be motivated to slant their testimony in [the other's] favor and vice-versa." [25]

---

21. The estate's proposed jury instruction provided:

Counsel for Plaintiff and Defendants have entered into a stipulation which establishes that Defendant Sitnasuak has no liability for any acts of independent negligence by Sitnasuak. The Honda Defendants have agreed to and will indemnify Sitnasuak as the seller of the 3–wheeler in question against any judgment entered in this action.

This means that the Honda defendants have agreed to be financially responsible for any judgment rendered against Sitnasuak in this action.

A.S. 09.17.080, for any acts of independent: [sic] negligence, gross negligence and/or recklessness....

....

5. The Honda defendants have agreed to and will continue to defend Sitnasuak against those claims asserted by plaintiff which may subject Sitnasuak to "conduit" product liability.

6. The Honda defendants will indemnify Sitnasuak against any judgment which may be entered against Sitnasuak based on "conduit" product liability.

22. Sitnasuak's financial obligation did not change after the settlement and indemnity agreement with Honda: as a mere conduit, Sitnasuak was always entitled to full contribution from Honda on any damage award against it. *See Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.*, 822 P.2d 925, 936 (Alaska 1991).

23. 818 P.2d 645 (Alaska 1991).

24. Alaska Rule of Evidence 408 states in relevant part:

Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution....

25. *Frontier Cos. of Alaska*, 818 P.2d at 652.

But *Frontier* is easily distinguishable from this case. In *Frontier*, employees of both co-defendants appeared as witnesses and the settlement agreement between them obligated both parties to pay half of any judgment against either.[26] That situation created a potential for bias on the part of the co-defendants because of their inter-related interests in the litigation. Our ruling simply recognized that an undisclosed settlement agreement aligning the interests of co-defendants would have deceptively maintained the appearance of adversity in the litigation.

Here, by contrast, the indemnity agreement did not align Sitnasuak's interests with Honda's; it simply left Sitnasuak with no real interest in the litigation. And in the absence of evidence of the agreement, there was no deceptive appearance of adversity. Moreover, no employee or representative of Sitnasuak appeared as a witness, thus elimi-nating any residual possibility of actual or apparent bias. Given these circumstances, the trial court did not abuse its discretion in declining to give the jury instruction.

## IV. CONCLUSION

The decision of the trial court is AF-FIRMED in part and REVERSED in part; we REMAND for proceedings consistent with this opinion.

EASTAUGH and CARPENETI, Justices, not participating.

---

26. *Id.* at 648, 651–52.