*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, as subrogee of Eggor Enterprises, Inc., | ) ) ) ) | Supreme Court Nos. S-16584/16604 |
|  | ) | Superior Court No. 3AN-14-07190 CI |
| Appellant and Cross-Appellee, | ) ) ) | O P I N I O N |
|  | ) |  |
| v. | ) | No. 7277 – August 24, 2018 |
|  | ) |  |
| CARLILE TRANSPORTATION SYSTEMS, INC., | ) ) ) |  |
|  | ) |  |
| Appellee and Cross-Appellant. | ) ) ) |  |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Mark E. Wilkerson and Michelle Q. Pham, Preg O'Donnell & Gillett PLLC, Seattle, Washington, for Appellant/Cross-Appellee. Robert L. Richmond and Marc G. Wilhelm, Richmond & Quinn, P.C., Anchorage, for Appellee/Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

An insurance company, as subrogee of its trucking company client, sued another trucking company for negligence after an accident between two truckers resulted in the insurance company paying over $3.5 million in oil spill remediation costs. After a trial the jury determined that the other trucking company's driver was not negligent and returned a defense verdict. The insurance company now appeals some of the superior court's trial rulings. Seeing no reversible error, we affirm the superior court's entry of final judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

One night in February 2014 Carlile Transportation Systems, Inc. driver Bart Neal was driving a tractor-trailer southbound on the Dalton Highway. Neal could not steer properly at speeds above 35 miles per hour and decided to stop to put chains on his tires, referred to as "chaining up." Neal stopped his rig in the roadway, partially blocking both traffic lanes, and, by his account, activated his flashers. Neal did not deploy reflective triangles.

Meanwhile, south of where Neal was stopped, Eggor Enterprises, Inc. driver Joe Seurer was hauling a load of fuel northbound. By his account, Seurer saw lights in the distance but could not determine what they were. He called on the radio but received no response, and he slowed his tractor-trailer from 50 to 35 miles per hour. About three-quarters of a mile from Neal, Seurer again saw lights and thought they might be from a pipeline maintenance truck stopped off the side of the road. He did not see reflective triangles or flashers.

The road had an S-curve between Seurer and Neal. Until Seurer rounded the final curve, he did not realize Neal's rig was blocking the road. Seurer applied his brakes about 300 feet from Neal, avoiding a serious collision but causing Seurer's trailer

to fall onto the side of the highway. The trailer's fuel load spilled alongside the road. Eggor Enterprises's insurer, HDI-Gerling American Insurance Company (HDI), paid over $3.5 million in cleanup costs to remediate the spill.

### B. Proceedings

In October 2015 HDI sued Carlile for the remediation costs and other damages, asserting the spill was caused by Neal's negligence. The superior court held a ten-day jury trial in September 2016.

HDI's primary theory of the case was that Carlile was vicariously liable for Neal's actions and that Neal was either common-law negligent or negligent per se for violating 49 C.F.R. § 392.22, a federal highway regulation that applies to commercial drivers.[1] Section 392.22 provides that commercial drivers who stop for any reason other than a "necessary traffic stop" must immediately activate flashers[2] and, "as soon as possible, but in any event within 10 minutes," deploy warning devices such as reflective triangles.[3] HDI introduced evidence tending to show that Neal had not activated flashers; Neal admitted to not deploying triangles.

---

[1]     Negligence is a tort for which the plaintiff recovers for harm caused by the defendant's breach of a duty of care to the plaintiff. *Parks Hiway Enters., LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 667 (Alaska 2000). In common-law negligence the duty owed is determined by case law, usually as a duty "to act as a reasonable person would under the circumstances." *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996). In negligence per se, however, duty and breach are established when the defendant violates a statute or regulation and the defendant's conduct toward the plaintiff is "within the ambit of the statute or regulation in question." *Cable v. Shefchik*, 985 P.2d 474, 477 (Alaska 1999) (quoting *Osborne v. Russell*, 669 P.2d 550, 554 (Alaska 1983)).

[2]     49 C.F.R. § 392.22(a) (2018).

[3]     *Id.* § 392.22(b)(1); *id.* § 393.95(f).

Carlile argued in the alternative that Neal was not negligent, or that Neal's negligence did not cause HDI's injury, or that Seurer was negligent and comparatively at fault. Carlile sought to show that Neal complied with section 392.22 by arguing that it does not apply to chain-up stops lasting less than ten minutes. Carlile introduced evidence tending to show that Neal had activated flashers but conceded that he had not deployed triangles.

Both parties presented evidence supporting their theories. Much of the evidence was conflicting, but all witnesses — including Seurer and a former State of Alaska compliance officer — agreed that commercial drivers did not have to deploy triangles when they stopped to chain up on the Dalton Highway.

Most of the trial proceeded without controversy, but during Neal's testimony he made two potentially prejudicial remarks in front of the jury. Neal knew Seurer by his radio call sign "Smokin' Joe," and during pretrial proceedings the superior court ordered Carlile to refrain from referring to Seurer by this name; HDI was concerned that the name would suggest to the jury that Seurer was a reckless driver.

Although warned not to say "Smokin' Joe" during testimony, Neal nevertheless said: "So if you got to chain up, by the time I go out, put the reflectors out, go back, chain up, and then go back out and get the reflectors again, under this circumstances, I probably would have been killed by Smokin' Joe when he come around that corner." The superior court called an immediate bench conference, which concluded with the court deciding: "We'll let it go this time, but next time, if he says it again, I'll say something." HDI did not object to this course of action.

A few minutes later, Neal used "Smokin' Joe" again:

Q:      Didn't I ask you about every conversation you had
        with every person at the scene of that accident?

> A: Yes, and I believe I told you I only talked to two people.
>
> Q: Did you —
>
> A: Smokin' Joe — or —

After this second use, the superior court waited until the jury was excused before admonishing Neal and Carlile. HDI did not object to this course of action, and there was no third use of Seurer's radio call sign.

Carlile moved for a directed verdict after HDI rested its case, but that motion was denied. After the close of all the evidence, the parties agreed to a special verdict form asking whether either Carlile or Eggor was negligent and whether that negligence caused HDI's injury. The form did not distinguish between common-law negligence and negligence per se.

HDI sought a negligence per se jury instruction based on section 392.22 and Neal's failure to use flashers or deploy triangles. As part of its proposed instruction, HDI requested that the superior court define "necessary traffic stop" in the regulation as "a stop that is caused by (1) an official traffic control device, (2) an authorized governmental agent, (3) an authorized flagger, or (4) to avoid other traffic on the roadway." This grammatically challenged definition would have excluded chain-up stops from being a necessary traffic stop, preventing the jury from finding that Neal had complied with the regulation.

Carlile opposed the instruction, arguing that negligence per se did not apply in this case. Carlile also opposed defining necessary traffic stop in section 392.22, arguing alternatively that chain-up stops could qualify as necessary traffic stops or that the jury did not need the term defined for them.

The superior court determined that negligence per se could apply and decided to give a negligence per se instruction. But the court did not define necessary traffic stop for the jury, reasoning:

> I'm not going to tell them how to interpret that. The [federal regulation] doesn't tell them. I'm going to leave that in the jury's good hands. The cases [offered by HDI in support of its definition] were state cases, if I recall correctly. They were interesting, but I feel without a federal definition I'm not going to go that far in the instruction.

The final jury instruction provided the text of section 392.22(a)-(b)(1)[4] and an instruction that the jury must find negligence if Neal violated the regulation unless the violation was excused, along with six ways a regulation violation would be excused. Relevant to this appeal, one excuse the jury instruction listed was that Carlile's violation would be excused if the law's meaning was obscure or unreasonable and if Carlile acted with reasonable care in attempting to obey it. The final instruction did not define necessary traffic stop or any other portion of the regulation.[5]

---

[4] Section 392.22 also includes subsection (b)(2), providing rules for special circumstances. The superior court removed this section as inapplicable based on the evidence presented at trial.

[5] Jury Instruction 29 read:

> The law of the State of Alaska is as follows:

> A person driving a commercial motor vehicle, or a company whose business involves the operation of a commercial motor vehicle, upon a highway or vehicular way or area, shall comply with the regulations relating to the operation or driving of commercial motor vehicles, adopted by the United States Department of transportation and contained in 49 C.F.R. Part 392 (Driving of Commercial Motor Vehicles)
> . . . .

(continued...)

[5] (...continued)

49 C.F.R. Part 392.22 is as follows:

(a) Hazard warning signal flashers. Whenever a commercial motor vehicle is stopped upon the traveled portion of a highway for any cause other than necessary traffic stops, the driver of the stopped commercial motor vehicle shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required by paragraph (b) of this section.

(b) Placement of warning devices — (1) General rule. Except as provided in paragraph (b)(2) of this section, whenever a commercial motor vehicle is stopped upon the traveled portion of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place three bidirectional emergency reflective triangles in the following manner:

. . . .

If you find that Carlile violated this law, then you must find that Carlile was negligent, unless you find that the violation is excused.

The violation is excused if:

. . . .

(6) the meaning of the law was obscure or unreasonable and Carlile acted with reasonable care in attempting to obey it.

If you find that Carlile complied with this law, or that any violation was excused, you may still find that it was negligent if you decide that a reasonable person would have

(continued...)

The jury deliberated and quickly requested the complete text of section 392.22. After discussion with the parties, the superior court declined to provide the complete text or any additional explanation. The jury continued deliberations and returned a verdict for Carlile. The special verdict form indicated that Carlile was not negligent; accordingly the rest of the answers were blank.

HDI moved for a new trial, challenging the verdict as against the weight of evidence. HDI argued that no excuses applied and that the jury should have found Neal negligent per se for failing to deploy triangles or activate flashers. HDI also argued that the weight of the evidence showed Neal was common-law negligent. The superior court denied HDI's motion and entered judgment for Carlile.

HDI appeals the superior court's handling of Neal's "Smokin' Joe" comments, negligence per se jury instructions, and denial of a new trial. Carlile cross-appeals the superior court's use of a negligence per se instruction and denial of Carlile's directed verdict motion.

## III. STANDARDS OF REVIEW

We generally review the superior court's handling of prejudicial witness remarks for an abuse of discretion.[6] But "[t]he failure to object to prejudicial remarks and to move the court for a mistrial or for an admonition to the jury constitutes a waiver of the objection."[7]

> Jury instructions involve questions of law to which we apply our independent judgment. When reviewing a trial court's denial of a proposed instruction, our inquiry focuses upon

---

[5]     (...continued)
        taken precautions in addition to those required by these laws.

[6]     *See Otis Elevator Co. v. McLaney*, 406 P.2d 7, 10 (Alaska 1965).

[7]     *Heacock v. Town*, 419 P.2d 622, 623 (Alaska 1966).

whether the instructions given, when read as a whole, adequately inform the jury of the relevant law. An error in jury instructions is grounds for reversal only if it caused prejudice. In evaluating whether there has been prejudicial error with regard to jury instructions, we put ourselves in the position of the jurors and determine whether the error probably affected their judgment.[8]

"[W]hether to grant or refuse a new trial 'rests in the sound discretion of the trial court.' "[9]

In reviewing the substance of a trial court's order denying a new trial, we view the evidence in the light most favorable to the non-moving party, and "will . . . reverse a decision to deny a new trial [only] if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[10]

## IV. DISCUSSION

### A. HDI Waived Objection To Neal's Potentially Prejudicial Remarks.

HDI argues for reversal because Neal twice referred to Seurer as "Smokin' Joe" in violation of the superior court's pretrial order. HDI contends that Neal intentionally made these comments to cast Seurer as a reckless driver and support Carlile's comparative negligence argument.

---

[8]     *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015) (footnotes and internal quotation marks omitted) (quoting *Thompson v. Cooper*, 290 P.3d 393, 398-99 (Alaska 2012)).

[9]     *Hunter v. Philip Morris USA, Inc.*, 364 P.3d 439, 447 (Alaska 2015) (quoting *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002)).

[10]     *Id.* (footnotes omitted) (first quoting *Kava*, 48 P.3d at 1173 (Alaska 2002); then citing *id.*; then quoting *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006)).

HDI waived this argument by failing to request any contemporaneous action by the superior court.[11]  After the first use of "Smokin' Joe," the superior court noted:  "We'll let it go this time, but next time, if he says it again, I'll say something."  HDI did not object to this course of action.  After the second use, the court waited until the jury was excused before admonishing Neal and Carlile once more.  This was a reasonable course of action:  "The trial [court], in [its] discretion, is best able to determine whether there was any intentional misconduct . . . and to evaluate the probable impact of [such misconduct] upon the jury."[12]  Here there was concern that admonishing Neal and Carlile in front of the jury could bring the issue to the jury's attention when it may have been previously unnoticed.[13]  The superior court decided to admonish Neal outside of the jury's presence before using harsher remedies.  HDI did not object to this course of action, and there was no third use of "Smokin' Joe."  HDI cannot now complain of the superior court's handling of the remarks after failing to object at trial.[14]

---

[11]     *See Heacock v. Town*, 419 P.2d 622, 623 (Alaska 1966) ("The failure to object to prejudicial remarks and to move the court for a mistrial or for an admonition to the jury constitutes a waiver of the objection.").

[12]     *Otis Elevator Co. v. McLaney*, 406 P.2d 7, 10 (Alaska 1965).

[13]     *Cf. Parish v. State*, 477 P.2d 1005, 1011 n.13 (Alaska 1970) ("[T]he observation has been made that attorneys will frequently refrain from asking for a limiting instruction simply because it serves no purpose other than to call attention to the prejudicial evidence.").

[14]     *See Heacock*, 419 P.2d at 623.  We may review a waived argument for plain error, which exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."  *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981).  But any supposed mistake here was not "obvious"; as explained above, admonition outside of the jury's presence was a reasonable course of action.  We therefore decline to find that the superior court's chosen actions were plain error.

**B.      Any Possible Error In Failing To Define "Necessary Traffic Stop" Was Harmless.**

HDI argues that the superior court erred by refusing to define "necessary traffic stop" in connection with its negligence per se instruction.  HDI argues that section 392.22 required Neal to deploy triangles if he was not making a necessary traffic stop, and that, without a clarifying definition, the jury could have thought he was making a necessary traffic stop based on an erroneous interpretation of the law.  HDI argues that this "prejudicial ambiguity" in the instructions requires reversal for a new trial.

Some authority supports HDI's position that a definition was required in this case.  "[A] plaintiff is generally entitled to a jury instruction 'consonant with the theory of [the] case' if the evidence supports the plaintiff's theory."[15]  And the failure to give such an instruction is reversible error when the jury instructions as a whole allow the verdict to rest on an erroneous legal theory.[16]

We first announced this rule in *McKee v. State*, when we reversed a conviction due to the superior court's failure to define an elemental term.[17]  In that case McKee was charged with possessing a "concealed" weapon for carrying a knife.[18]  McKee testified that he had the knife clipped onto his coat such that it was partially in view and requested a jury instruction stating that "concealed" meant "completely hidden,

---

[15]      *Parnell v. Peak Oilfield Serv. Co.*, 174 P.3d 757, 764 (Alaska 2007) (quoting *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980)).

[16]      *See Thompson v. Cooper*, 290 P.3d 393, 401 (Alaska 2012); *Parnell*, 174 P.3d at 764-65; *McKee v. State*, 488 P.2d 1039, 1043 (Alaska 1971).

[17]      488 P.2d at 1042-43.

[18]      *Id.* at 1042.

secreted, or screened from you."[19] The superior court refused to give this, or any, instruction defining "concealed about the person," and McKee was convicted.[20] We reversed, first holding that "a weapon is concealed if it is hidden from ordinary observation."[21] We then held that a definition was necessary because "the jury might have believed McKee's version of the facts, yet have concluded erroneously that he could be found guilty under the terms of the statute if any portion of the knife was hidden from view."[22] We explicitly rejected the argument, seemingly adopted by the superior court here and urged on us by Carlile, that the court did not need to give an instruction because the jurors could determine the disputed term's meaning themselves.[23] Instead we announced the rule that "where [a term] is susceptible of differing interpretations, only one of which is a proper statement of the law, an instruction must be given."[24]

The same rule conceivably could govern this appeal. The term "necessary traffic stop" first appeared in federal regulations in 1939, without any definition.[25] The term has not since been defined by the United States Supreme Court or any federal agency. The term does not appear in any other regulations from the same period where the context is more clear. It is not commonly used in everyday language. And the

---

[19] *Id.*

[20] *Id.* at 1040, 1042.

[21] *Id.* at 1042.

[22] *Id.* at 1042-43, 1043 n.26.

[23] *Id.*

[24] *Id.*

[25] Motor Carrier Safety Regulations Revised, 4 Fed. Reg. 2,294, 2,299 (June 7, 1939).

evidence at trial established that Alaska's trucking industry has given the term a meaning almost completely opposite what HDI proposed at trial. Given these facts, the term necessary traffic stop is likely "susceptible of differing interpretations."[26]

Were we to apply *McKee*'s rule to this case, we could accordingly conclude that the superior court erred by declining to define necessary traffic stop. But we find it unnecessary to decide whether an instruction was required in this case because, even assuming necessary traffic stop means generally what HDI claims it means,[27] no reasonable jury could have found negligence per se on these facts.

The jury was instructed that Carlile was excused from compliance with the regulation if "the meaning of the law was obscure or unreasonable and Carlile acted with reasonable care in attempting to obey it." The evidence at trial showed without contradiction that drivers, experts, and regulators in Alaska think that reflective triangles are not required when chaining up; even Seurer testified that he did not think he needed to deploy triangles in that situation. HDI does not contest this evidence on appeal, instead conclusorily asserting that the regulation's meaning "obviously" was not obscure to Carlile because it trained its drivers to follow the regulation. But this conclusion does not follow; if HDI is correct and the regulation does not mean what Carlile thinks, the Alaska trucking industry's certainty that it is correctly interpreting section 392.22 makes its meaning *more* obscure, not less. Given this unanimous testimony, no reasonable jury could have found that the meaning of section 392.22 was not obscure or unreasonable

---

[26]     *See McKee*, 488 P.2d at 1043.

[27]     We express no opinion whether a chain-up stop is a necessary traffic stop under the regulation. But we do note that HDI's proposed definition of necessary traffic stop was clearly underinclusive; at minimum a necessary traffic stop must account for traffic controls and exigencies involving other vehicles, law enforcement, animals crossing the road, and other similarly required stops.

and that Carlile acted with reasonable care in obeying the rule as Carlile understood it. And because no reasonable jury could have found that Carlile was not excused, any potential error did not affect the jurors' verdict.[28]

HDI argues that we should not look at the evidence of excuse in this case because Carlile had the burden of showing excuse and it did not "argue or present any evidence that its failure to follow the regulation was excused." It is true that Carlile had the burden of showing excuse[29] and that Carlile did not make excuse the focus of its closing argument, choosing instead to argue that there was no violation. But Carlile did present uncontradicted testimony supporting excuse, and the jury was correctly instructed that Carlile was excused if the regulation was obscure and Carlile acted with reasonable care in attempting to obey it. And the jury was clearly interested in section 392.22's applicability to negligence per se; its first note to the court during deliberations was a request to see the complete text of the regulation. Given these facts, we are not persuaded that Carlile's failure to argue excuse should determine the harmlessness question. We instead conclude that the error was harmless because the jury should have applied the law of excuse to the uncontroverted testimony in this case and found that Carlile was excused. A reasonable jury following the law as explained in the instructions could not have done otherwise.

---

[28] *See City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015) ("In evaluating whether there has been prejudicial error with regard to jury instructions, we put ourselves in the position of the jurors and 'determine whether the error probably affected their judgment.' " (quoting *Thompson v. Cooper*, 290 P.3d 393, 399 (Alaska 2012))); *see also Patterson v. Cox*, 323 P.3d 1118, 1121 (Alaska 2014) ("Of course, if no reasonable jury could have found for [the plaintiff] on his products liability claim, the superior court's omission would be harmless.").

[29] *See Ferrell v. Baxter*, 484 P.2d 250, 266 (Alaska 1971) ("It is fair to put the burden of proving excuse upon the one who has violated the law in the first place.").

**C.** **It Was Not An Abuse Of Discretion To Deny HDI's Motion For A New Trial.**

HDI also argues that the judgment must be reversed because the superior court failed to grant a new trial. HDI asserts that the great weight of evidence required the jury to find negligence per se on this record, either for the failure to deploy triangles or to use flashers.[30]

Whether to grant or deny a new trial "rests in the sound discretion of the trial court."[31] We will "reverse a decision to deny a new trial [only] if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[32] "If there is an evidentiary basis for the jury's decision, denial of a new trial must be affirmed."[33] HDI cannot meet this high burden.

First, as to the failure to deploy triangles, we already have concluded that a reasonable jury would have found Carlile's actions were excused based on the evidence presented at trial. The superior court did not abuse its discretion by refusing a new trial on this point. Second, as to the failure to use flashers, there was ample testimony supporting the jury verdict. Neal testified that he used flashers. Neal testified that Seurer said he saw flashers. A responder from Prudhoe Bay testified that Seurer said he saw

---

[30] HDI does not appeal the superior court's denial of a new trial on the issue of common-law negligence.

[31] *Hunter v. Philip Morris USA, Inc.*, 364 P.3d 439, 447 (Alaska 2015) (quoting *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002)).

[32] *Id.* (quoting *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006)).

[33] *Kocurek v. Wagner*, 390 P.3d 1144, 1151 (Alaska 2017) (quoting *Mullen v. Christianson*, 642 P.2d 1345, 1348 (Alaska 1982)).

lights in the distance and thought they were pickup trucks with their flashers on. Photographs taken at the scene suggested that the flashers were on. This evidence, viewed in the light most favorable to Carlile, was not "so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[34]

## V. CONCLUSION

We AFFIRM the superior court's entry of final judgment for Carlile. We therefore do not address Carlile's cross-appeal.

---

[34] *See Hunter*, 364 P.3d at 447 (quoting *Hogg*, 134 P.3d at 352).