*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DOLORES HUNTER, as personal representative for the ESTATE OF BENJAMIN G. FRANCIS, | ) ) ) | Supreme Court Nos. S-15126/15135 |
| | ) | Superior Court No. 4BE-06-00407 CI |
| Appellant and Cross-Appellee, | ) ) | O P I N I O N |
| v. | ) ) | No. 7071 – December 18, 2015 |
| PHILIP MORRIS USA INC., | ) ) | |
| Appellee and Cross-Appellant. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Eric Smith, Judge.

Appearances: Don C. Bauermeister, Burke & Bauermeister, PLLC, Bremerton, Washington, for Appellant/Cross-Appellee. Jeffrey M. Feldman and Susan Orlansky, Feldman Orlansky & Sanders, Anchorage, Steven S. Tervooren, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, Geoffrey J. Michael, Arnold & Porter, LLP, Washington, D.C., Patrick J. Gregory, Shook, Hardy & Bacon, LLP, San Francisco, California, and Stanley D. Davis, Shook, Hardy & Bacon, LLP, Kansas City, Missouri, for Appellee/Cross-Appellant.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

# I.    INTRODUCTION

Dolores Hunter, the personal representative of the estate of Benjamin G. Francis, appeals from a series of orders following a jury verdict in a wrongful death, products liability, and fraud action against Philip Morris USA Inc. resulting from Francis's death from lung cancer. Following the verdict, Hunter moved for a new trial on the basis of evidentiary rulings at trial and on the basis that the verdict was against the weight of the evidence. The superior court initially granted Hunter's motion for a new trial based on the weight of the evidence but then granted Philip Morris's motion to reconsider, vacated its first order and denied Hunter's motion for a new trial. Because the superior court's orders applied a test that is inconsistent with the "weight of the evidence" new trial standard we have established to guide trial courts, we reverse and remand for renewed consideration of Hunter's motion.

# II.    FACTS AND PROCEEDINGS

## A.    Background And Pre-Trial Proceedings

Benjamin Francis died of lung cancer in December 2004. Dolores Hunter, the personal representative of his estate, filed a wrongful death action against Philip Morris USA Inc., Altria Group, Inc., and the Alaska Commercial Company, alleging that the cigarettes they collectively sold to Francis were responsible for his death and that they were liable under various theories related to fraud and products liability. Philip Morris answered, and the parties prepared for trial.[1]

In the months before the trial, both parties filed a number of motions in limine. Of particular relevance in this appeal is a Philip Morris motion that sought to preclude Hunter from referring to the findings of fact and conclusions of law from a

---

[1]    The claims against Philip Morris's co-defendants were dismissed before trial.

federal lawsuit, *United States v. Philip Morris USA Inc.*[2]  In that case, Judge Gladys Kessler of the United States District Court for the District of Columbia issued an extensive opinion finding that Philip Morris and other cigarette manufacturers had violated the federal Racketeer Influenced and Corrupt Organizations (RICO) Act by jointly and fraudulently deceiving the public about the health consequences of smoking and secondhand smoke, the addictiveness of nicotine, the health benefits of "light" cigarettes, and design choices aimed at sustaining nicotine addiction.[3]  In addition to finding Philip Morris liable in that case, Judge Kessler enjoined the corporation from engaging in a wide variety of practices, including "conveying any express or implied health message or health descriptor for any cigarette brand."[4]  To that end, Judge Kessler specified that words such as "low tar," "light," "ultra light," "mild," "natural," and related terms could not be used in any branding, advertising or other informational material.[5]

In its motion in limine, Philip Morris argued that references to Judge Kessler's injunction and findings of fact and conclusions of law would constitute inadmissible hearsay and otherwise confuse and unduly prejudice the jury.  It therefore requested that the superior court rule that Hunter would not be permitted to introduce the findings directly, have a witness reference the findings, or cross-examine a defense witness using the findings.

Hunter opposed Philip Morris's motion.  She claimed that she did not "seek to have Judge Kessler's Opinion, Findings of Fact, Conclusions of Law or granting of

---

[2]     449 F. Supp. 2d 1 (D.D.C. 2006).

[3]     *Id.* at 27.

[4]     *Id.* at 938.

[5]     *Id.*

remedies admitted into evidence in this action, unless the door is open to such." But she did request that the superior court "enforce Judge Kessler's injunction" highlighting language from the opinion in the federal case that "prohibited [the defendants in that case] from making, or causing to be made in any way, any material, false, misleading or deceptive statement or representation concerning cigarettes that is disseminated in the United States."[6] Her motion concluded that, "[a]s a matter of comity, [the superior court] must enforce Judge Kessler's injunction" and that Philip Morris's counsel and witnesses therefore "should be prohibited from introducing evidence or argument that involves any of the findings made by Judge Kessler."

The superior court granted Philip Morris's motion in limine, concluding that the judicial findings at issue were inadmissible hearsay. The superior court's order noted that "it is not at all clear what plaintiff means in asking the court to 'enforce' the injunction," and expressed the court's "considerable doubt it has the authority to enforce an injunction entered by a federal court when plaintiff is not a party to the case."

## B.   Trial And Verdict

The trial began in October 2011. Although it lasted nearly a month, the testimony from one witness is most relevant to Hunter's current appeal. During Philip Morris's defense, it called Dr. Peter Lipowicz, a senior principal scientist at Altria Client Services,[7] as an expert witness. Among the topics that Dr. Lipowicz testified about on direct examination was Philip Morris's design effort, starting in the 1950s, to "make a cigarette somewhat less dangerous and a little bit safer." Dr. Lipowicz testified that he believed that Philip Morris's lines of cigarettes with reduced tar and nicotine yields,

---

[6]      *Id.* at 932-33.

[7]      The Altria Group owns Philip Morris USA and other tobacco operating companies. *At-A-Glance*, ALTRIA, http://www.altria.com/Our-Companies/At-A-Glance /Pages/default.aspx (last visited December 11, 2015).

including Marlboro Lights, had succeeded in that effort, and that "it was really promoted by the public health community" for years.

During cross-examination, Hunter's counsel turned to the reasons that Philip Morris no longer sold cigarettes under the name Marlboro Lights. Dr. Lipowicz testified that Philip Morris "had to take the word 'lights' off our cigarettes [as required by] the FDA." Hunter's counsel asked why federal law banned the descriptor "light," which elicited Dr. Lipowicz's testimony that he was "not sure [of] all the foundation for the law." Hunter's counsel then asked, "Are you telling us that it's not even legal to put 'lights' on the package anymore?" at which point Philip Morris's counsel objected. At that point, the superior court ended Dr. Lipowicz's testimony for the day and discussed Philip Morris's objection and the questions Hunter's counsel planned to ask Dr. Lipowicz the next morning. The superior court identified two lines of conflict between the parties: whether Dr. Lipowicz's testimony had violated Judge Kessler's injunction, and whether Hunter's counsel could cross-examine Dr. Lipowicz about Judge Kessler's findings and the findings Congress had made in the Family Smoking Prevention and Tobacco Control Act, the 2009 legislation that banned the "light" descriptor. Hunter's counsel asked to submit a brief addressing both topics, which the superior court allowed, and Philip Morris's counsel took the opportunity to argue that the Congressional findings were both inadmissible as evidence of the facts Congress found and beyond the scope of Dr. Lipowicz's testimony on direct examination.

The next morning Hunter's counsel moved "for judicial notice and enforcement of [Judge Kessler's] injunction." This motion first argued that Dr. Lipowicz's testimony on direct examination had violated Judge Kessler's injunction against "falsely den[ying] . . . that its light or low tar descriptors are misleading," and requested that the superior court enforce the injunction by offering a corrective instruction. The motion then argued that "Congress has banned 'light' and similar

descriptors because they are misleading," and quoted Congress's finding that "many smokers mistakenly believe that 'low tar' and 'light' cigarettes cause fewer health problems than other cigarettes."[8]

At the start of the day's proceedings, the parties again discussed the evidence Hunter's counsel could use in his cross-examination of Dr. Lipowicz. The superior court determined that it lacked authority to enforce Judge Kessler's injunction, as it had suggested in its pre-trial order. The superior court discussed the admissibility of Congress's findings in greater depth and challenged Philip Morris's counsel's characterization of those findings as hearsay. The superior court concluded the discussion by addressing Hunter's counsel: "Given the complications of the issue, I believe that the witness was asked yesterday if those words had to be taken off, and his answer was, 'Yes, Congress told us to.' And I'm going to — Mr. Bauermeister, you can — you'll just leave it at that."

Hunter's counsel resumed his cross-examination of Dr. Lipowicz. In accordance with the trial court's orders, he did not directly ask why Congress and the FDA had banned certain descriptors. But he did cross-examine Dr. Lipowicz using a 2010 report from the National Cancer Institute that concluded that the existence and marketing of low-yield cigarettes may have increased the number of deaths due to smoking by encouraging smokers with health concerns to switch rather than quit altogether. Dr. Lipowicz agreed that Philip Morris did not publicly contest the National Cancer Institute's conclusions, which were read to the jury.

At the conclusion of the trial, the jury returned a special verdict form. The jury found that Philip Morris's product was not defective. But it further found that Philip

---

[8]     Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 2(38), 123 Stat. 1776, 1780 (2009).

Morris had made one or more false or misleading statements regarding the dangers of cigarette smoking, that it had known the statements were false or misleading when it made them, and that it intended or had reason to expect that Francis would rely on them. Finally, it found that Francis had not seen or heard any false or misleading statements by Philip Morris and therefore returned a verdict for Philip Morris.

## C. The Superior Court's First Order, Granting Hunter's Motion For A New Trial

Hunter moved for a new trial under Alaska Civil Rule 59 on the grounds that the jury had been misled by false evidence, that Philip Morris's defense had violated an injunction issued by another court, and that the jury's findings were against the clear weight of the evidence. Hunter first asserted that the court's evidentiary rulings at trial had impermissibly restricted her counsel's ability to cross-examine Dr. Lipowicz about Judge Kessler's findings, and that as a result Dr. Lipowicz had been able to mislead the jury about whether Congress had found that Philip Morris acted fraudulently. But the superior court rejected this argument.

The superior court reasoned that Judge Kessler's findings were "both hearsay and not binding on either this court or the jury," and that Hunter's "planned cross examination would have rested on the factual accuracy of Judge Kessler's findings." The superior court observed that "the fact that Dr. Lipowicz knew about [Judge Kessler's] findings had no bearing on the content of his testimony unless one compared his testimony to the content of the findings themselves." The superior court thus rejected Hunter's arguments that the results of the suit in Judge Kessler's court should have been admissible as an exception to hearsay offered for a purpose other than the truth of the matter asserted. Additionally, the superior court reasoned that because the injunction was stayed when Philip Morris removed the descriptor "light" from its

products, Dr. Lipowicz could have testified truthfully that the injunction had not been the cause of that change.

But the superior court granted Hunter's motion for a new trial on the ground that the jury's finding that Francis did not see or hear any false or misleading statements was against the weight of the evidence. Its order set out the standard trial courts should consider when deciding whether to grant a new trial by citing and quoting this court's opinions in *Kava v. American Honda Motor Co.*[9] and *Hogg v. Raven Contractors, Inc.*[10] Specifically, the superior court quoted the following language from *Kava*:

> [A] trial court may set aside a verdict and order a new trial in the interest of justice if the verdict is against the weight of the evidence. In deciding a motion for a new trial on this basis, the court must use its discretion and independently weigh the evidence. A court may set aside a verdict as being against the weight of the evidence even when "there is substantial evidence to support it." The decision is a matter for the trial court's discretion.[11]

In a footnote, the superior court examined the court of appeals' decision in *Taylor v. State*.[12] Quoting that decision's statement that a new trial is available "only when the evidence supporting that verdict '[is] so slight and unconvincing as to make the

---

[9]    48 P.3d 1170 (Alaska 2002).

[10]    134 P.3d 349 (Alaska 2006).

[11]    This quotation in the superior court order is from *Kava*, 48 P.3d at 1176. The internal quotation is from 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed. 1995).

[12]    262 P.3d 232 (Alaska App. 2011).

verdict plainly unreasonable and unjust,' "[13] the superior court concluded that "[t]he standard used in reviewing a motion for a new trial in the context of a criminal trial actually is somewhat more deferential than that used in a civil trial."

The superior court then applied its understanding of the new trial standard to Hunter's contention that the jury's finding that Francis had not seen or heard any false or misleading statements by Philip Morris was against the weight of the evidence. The court wrote that "Francis clearly was exposed to the descriptor 'light,' " based on its inclusion on the packaging of Marlboro Lights, and that

> as defendant admitted at oral argument,[14] Mr. Francis switched to light cigarettes because they were less harsh and because he thought they were better for him. He accordingly had to have been exposed to . . . information that, as discussed below, had to have come to him directly or indirectly from [Philip] Morris.

The superior court thus reasoned that the verdict "therefore necessarily was against the weight of the evidence unless the jury found that the marketing of light cigarettes was not false or deceptive."

The superior court found that, "[w]hile a close call, . . . any finding by the jury that the campaign was [not] deceptive was against the weight of the evidence." Its order surveyed the evidence Hunter's experts presented on the issue of light cigarette marketing and weighed it against Philip Morris's defense, particularly the expert testimony of Dr. Peter Lipowicz. It concluded that

> [v]iewing the evidence as a whole in the court's role as effectively the thirteenth juror, the court finds that Dr. Lipowicz's testimony was not sufficiently credible to

---

[13]   This quotation in the superior court order is from *Taylor*, 262 P.3d at 234. The internal quotation is from *Howell v. State*, 917 P.2d 1202, 1212 (Alaska App. 1996).

[14]   Philip Morris denies having made such an admission.

undercut, much less to overcome, the substantial evidence indicating that defendant made false or misleading statements regarding the health risks posed by light cigarettes. Any finding by the jury to the contrary therefore went against the weight of the evidence.

The order therefore granted Hunter's motion for a new trial.

### D. The Superior Court's Second Order, Granting Philip Morris's Motion For Reconsideration And Denying A New Trial

Philip Morris moved for the superior court to reconsider its decision. Its motion alleged that the court had used the incorrect legal standard in its order granting a new trial. The motion instead offered language from *Mullen v. Christiansen*,[15] which Philip Morris argued demonstrated that "[a] new trial may be granted only 'where the evidence to support the verdict is completely lacking or is so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " Philip Morris further disagreed that the standard for granting a new trial on the ground that the verdict was against the weight of the evidence differs in the civil and criminal contexts.

Philip Morris's motion for reconsideration also contested the superior court's findings regarding the weight of the evidence. It argued that substantial credible evidence supported its contentions that light cigarettes do present lesser health risks and that Philip Morris and the public health community believed them to present lesser health risks at the time any statements were made. It also argued that the court erred in concluding both that Francis understood the term "light" to carry health connotations and that he had acted on such information. The motion concluded that the superior court had erred in its "wholesale rejection" of Philip Morris's "substantial and credible evidence," and that the order granting a new trial evinced a personal disagreement with the verdict, rather than a finding that it was against the weight of the evidence.

---

[15]     642 P.2d 1345 (Alaska 1982).

Hunter's opposition pointed out that the language from *Mullen* that Philip Morris quoted actually stated the standard an *appellate court* uses in its review of a trial court's denial of a motion for a new trial, rather than the standard the trial court is to use in considering such a motion in the first instance. Hunter maintained that the superior court's order granting a new trial had stated and applied the correct legal standard. She further argued that the superior court had correctly determined that the verdict was against the weight of the evidence.

The superior court granted Philip Morris's motion for reconsideration, vacating its prior order and denying Hunter's motion for a new trial. The court explained that it "grant[ed] reconsideration because it . . . more thoroughly evaluated the relevant case law and . . . concluded that it did not apply the correct standard" in its order granting a new trial.

The superior court's second order first evaluated *Mullen* and concluded that the decision "explicitly identif[ied] a standard for the trial court to use in deciding whether to grant a new trial." But because the court found that *Mullen* had "never been cited as the applicable standard to be applied by a trial court" and was "very difficult to square with the [Supreme] Court's repeated holdings, for example in *Kava*, that a motion for a new trial can be granted even if 'substantial evidence' supports the verdict," the court "conclude[d] that it would not be appropriate to rely on *Mullen* as the relevant standard in this case."

The superior court again examined the court of appeals' decision in *Taylor*, which it characterized as using the language from *Mullen* and "contain[ing] some of the conceptual difficulties . . . with respect to reconciling *Mullen* and *Kava*."

Next, the superior court explained that "[i]n its order granting a new trial in this case, [it had] essentially reviewed the evidence in an almost *de novo* fashion," and

noted that it was now convinced "that it [had] erred in doing so," because in evaluating such motions "the court must keep in mind the importance of the jury process."

The superior court looked to our cases interpreting Rule 59 for further guidance and focused on quotations and citations from treatises on civil procedure. In *Hash v. Hogan*[16] and in a footnote in *Sloan v. Atlantic Richfield Co.*,[17] we cited and quoted Moore's Federal Practice;[18] the superior court reproduced these quotations. In footnotes in *Kava* and *Hogg*, we cited Wright & Miller's Federal Practice and Procedure;[19] the superior court included a quotation from that source as well.[20] The superior court also considered insight from cases in other jurisdictions, including *Miller v. Pennsylvania Railroad Co.*,[21] a federal district court decision we cited in *Ahlstrom v. Cummings*,[22] and *Storey v. Camper*,[23] a decision by the Supreme Court of Delaware.

The superior court used all of these sources to synthesize a new standard for new trial motions:

---

[16]    453 P.2d 468 (Alaska 1969).

[17]    541 P.2d 717 (Alaska 1975).

[18]    6A JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.08[5], at 59-155-58 (2d ed. 1974).

[19]    11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed.1995).

[20]    As discussed below, the portion of Wright & Miller that the superior court quoted is not the portion of Wright & Miller that we cited in *Kava* or *Hogg*.

[21]    161 F. Supp. 633 (D.D.C. 1958).

[22]    388 P.2d 261, 262 n.2 (Alaska 1964).

[23]    401 A.2d 458 (Del. 1979).

[I]n deciding whether to order a new trial, a trial court may not simply reweigh the evidence. Rather, a trial court may only grant a motion for a new trial pursuant to Civil Rule 59 if, after independently evaluating all of the evidence in effect as the thirteenth juror, the court concludes that the weight of the evidence preponderates so heavily against the verdict that the court is left with the definite and firm conviction that a mistake has been made.

The superior court applied this new standard to the case at hand and concluded that "[w]hile again a close call, . . . a new trial [was] not warranted." The court found that Hunter had "made a strong showing that Mr. Francis was indeed exposed to misleading information regarding light cigarettes," and that "Mr. Francis had to have been exposed to information regarding whether light cigarettes were safe because he chose to smoke them in part because he believed they were safer." It also recounted that "counsel for defendant had conceded [that Mr. Francis's choice was based on perceived greater safety] at oral argument on the motion for new trial." However, the court also found that Philip Morris "presented considerable evidence to the contrary," including evidence of the public health community's historical views and "testimony from a live expert witness, Dr. Lipowicz." The superior court found that it "[could not] say as a matter of law that a rational juror could not accept Dr. Lipowicz's expert testimony as credible," and thus found that "a reasonable jury could have decided to believe defendant's expert with respect to the light cigarette issue and found that defendant had not made any misleading statements regarding this issue."

The superior court concluded that "[g]iven this ambiguity, [it could not] find that it ha[d] a definite and firm conviction that a mistake was made by the jury." It therefore granted Philip Morris's motion for reconsideration and vacated its previous order granting a new trial.

At the end of this order, the superior court predicted that its conflicting orders on Hunter's motion might be appealed to us and that we would need to select the correct standard for trial courts to use in deciding motions for new trial. The superior court expressed its hope that in such an event, "the Supreme Court will not have to order a remand." In order to avoid the need for a remand, the superior court provided its analysis in the alternative: "[I]f it were to apply the *Mullen* standard, then it would deny the motion for a new trial," but if it "were to apply the standard that it used in its original order granting a new trial, then it stands by its decision that pursuant to that standard, plaintiff is entitled to a new trial."

### E.   The Superior Court's Third Order, Denying Hunter's Motion For Reconsideration And Affirming The Denial Of A New Trial

Hunter moved for reconsideration of the second order and reinstatement of the first. Her motion argued that the superior court had adopted a new standard for her new trial motion that contradicted this court's decisions, and that even if the superior court's articulated standard was correct, that court had misapplied it by including in its order an evaluation of what a "rational juror" or "reasonable jury" could believe. Philip Morris responded, urging the superior court to maintain its determination that a new trial was not warranted.

The superior court denied Hunter's motion for reconsideration in a third order. It explained that it had "relied on the test set forth in [*Kava*] in both its order granting the motion for new trial and then in its order denying the motion for new trial." The superior court clarified that it had reached opposing conclusions because "*Kava* itself did not provide any explanation as to how the Alaska Supreme Court expected a trial court to implement the 'weight of the evidence' test." Thus, the superior court had first "interpreted *Kava* essentially to mandate a *de novo* review of the evidence," and

later adopted "a more deferential approach that took into account that the jury's verdict was entitled to some measure of respect."

In response to Hunter's claims that it had erred by considering what a "rational juror" or a "reasonable jury" could have believed, the superior court explained that this evaluation was required in the course of determining whether the verdict was supported by substantial evidence, because "[s]ubstantial evidence is evidence that a *reasonable mind* might accept as adequate to support a conclusion."[24] Therefore, the court determined that it "properly took into consideration whether a rational or reasonable juror could be persuaded" by Philip Morris's evidence.

The superior court concluded "that viewing the evidence as the thirteenth juror, the evidence [supporting the verdict] was substantial enough that the court was not left with a firm conviction that a mistake had been committed by the jury." It therefore denied Hunter's motion to reconsider its second order. Hunter appeals.

## III.  STANDARD OF REVIEW

"The question of whether to grant or refuse a new trial 'rests in the sound discretion of the trial court.' "[25] Whether the trial court applied the correct legal standard is a question of law that we review de novo.[26] In reviewing the substance of a trial court's order denying a new trial, we view the evidence in the light most favorable to the non-moving party,[27] and "will only reverse a decision to deny a new trial if the evidence

---

[24]     This quotation in the superior court's order is from *Williams v. Ketchikan Gateway Borough*, 295 P.3d 374, 375 (Alaska 2013) (emphasis added by superior court).

[25]     *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002) (quoting *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989)).

[26]     *Id.*

[27]     *Id.*

supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[28]

## IV.    DISCUSSION

### A.    The Weight Of The Evidence

Hunter's first argument on appeal is that the superior court erred when it reversed its original determination that the jury's verdict was against the weight of the evidence and that a new trial was therefore appropriate. We agree that the superior court's second and third orders did not identify the correct legal standard.

#### 1.    *Kava* establishes the standard trial courts should use in evaluating "weight of the evidence" motions for new trial.

In *Kava*, we explained that when a party seeks a new trial on the ground that the verdict is against the weight of the evidence,

> a trial court may set aside a verdict and order a new trial in the interest of justice if the verdict is against the weight of the evidence. In deciding a motion for a new trial on this basis, the court must use its discretion and independently weigh the evidence. A court may set aside a verdict as being against the weight of the evidence even when "there is substantial evidence to support it." The decision is a matter for the trial court's discretion.[29]

This continues to be the standard trial courts should use. We affirmed its validity in *Hogg v. Raven Contractors, Inc.*, in which we contrasted the *Kava* standard to be used by the trial court in ruling on a "weight of the evidence" new trial motion with

---

**28**    *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006) (quoting *Grant v. Stoyer*, 10 P.3d 594, 596 (Alaska 2000)).

**29**    *Kava*, 48 P.3d at 1176 (citations omitted). The omitted citations include Alaska R. Civ. P. 59(a); *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 723 & n.11 (Alaska 1975); and 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed. 1995).

the "considerably more deferential" standard we use as an appellate court when reviewing a trial court's new trial decision.[30] Our subsequent decisions on the topic have also affirmed the *Kava* standard.[31]

Trial courts seeking additional guidance about the proper application of the *Kava* standard will find it in Rule 59(a), which authorizes a trial court to grant a new trial "if required in the interest of justice," and in the most recent edition of Moore's Federal Practice, which emphasizes that a trial court's discretion should be exercised "when necessary to prevent injustice."[32] As Professor Moore explains in his discussion of "weight of evidence" new trial motions: "When the trial is lengthy and complicated and involves subject matters outside the ordinary knowledge of jurors, the [trial] court should more closely scrutinize the verdict; when the subject matter of the trial is simple and easily comprehended by intelligent laypersons, the [trial] court should use less demanding scrutiny."[33] This explanation may provide a useful structure for a trial court "exercising its broad discretion to determine whether the totality of the circumstances warranted a new trial in the interest of justice."[34]

Attempts to further refine the *Kava* standard for "weight of the evidence" new trial motions may run the significant risk of muddling more than they clarify.

---

[30] 134 P.3d at 352.

[31] *See, e.g.*, *Cameron v. Chang-Craft*, 251 P.3d 1008, 1022 (Alaska 2011); *Kingery v. Barrett*, 249 P.3d 275, 280-83 (Alaska 2011); *cf. Domke v. Alyeska Pipeline Serv. Co.*, 137 P.3d 295, 298-99 (Alaska 2006); *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005); *Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 668 (Alaska 2002).

[32] 12 JAMES WM. MOORE, FEDERAL PRACTICE § 59.13[1], at 59-38 (3d ed. 2015).

[33] *Id.* § 59.13[2][f][iii][A], at 59-72.

[34] *Kava*, 48 P.3d at 1177.

"Necessarily all formulations are couched in broad and general terms that furnish no unerring litmus for a particular case."[35] A trial court should continue to use its discretion to determine whether a verdict is against the weight of the evidence — not merely whether the trial court disagrees with the verdict — and whether a new trial is necessary "in the interest of justice,"[36] that is, "to prevent injustice."[37]

We commit this determination to trial courts' sound discretion based on our trust in their position, expertise, and humility. History has indicated that this trust is well deserved. Although an order granting a new trial is not an immediately appealable final judgment,[38] we are able to review such grants either by granting a petition for review of the granting order[39] or on an eventual appeal of the second trial's verdict. Experience has shown that there is little cause for concern about trial courts ordering new trials too frequently: Such orders are a distinct exception.

---

[35]    11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 90-91 (3d ed. 2012).

[36]    *Kava*, 48 P.3d at 1176; Alaska R. Civ. P. 59(a).

[37]    MOORE § 59.13[1], at 59-38.

[38]    *See* Alaska R. App. P. 202(a) ("An appeal may be taken to the supreme court from a final judgment entered by the superior court . . . ."); *Martech Constr. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1153 (Alaska 1993) ("The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, . . . one which ends litigation on the merits and leaves nothing for the court to do but execute the judgment." (omission in original) (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972))); 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2818, at 242-43 (3d ed. 2012) ("An order granting a new trial usually is not appealable, since it is purely interlocutory and is not . . . a final judgment.").

[39]    *See* Alaska R. App. P. 402.

**2.** *Mullen* **discussed the standard appellate courts should use in evaluating appeals of denials of "weight of the evidence" motions for new trials.**

In *Mullen* the trial court denied the defendant's motion for a new trial after a jury returned a special verdict in favor of the plaintiffs.[40] The defendants appealed this denial, and we affirmed. We described our standard of review in this setting as follows:

> A motion for a new trial will be granted when the evidence to support the verdict is completely lacking or is so slight and unconvincing as to make the verdict plainly unreasonable and unjust. If there is an evidentiary basis for the jury's decision, denial of a new trial must be affirmed. We will not interfere with the trial court's discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.[41]

The first sentence of this passage, read in isolation, could be interpreted to state the standard a trial court should apply to an original motion for a new trial based on an argument that the verdict was against the weight of the evidence. But the ensuing sentences clarify that this standard is in fact one that appellate courts should use in determining whether to "affirm[]" a "trial court's" order denying a new trial.

The citations offered in support of the first sentence quoted above also clarify that it is an appellate standard. We cited two cases, *Sloan v. Atlantic Richfield Co.*[42] and *Ahlstrom v. Cummings*.[43] In both of those cases, litigants unhappy with a trial court's decision not to grant their motion for a new trial appealed to this court, and in

---

[40] *Mullen v. Christiansen*, 642 P.2d 1345, 1346 (Alaska 1982).

[41] *Id.* at 1348 (citations omitted).

[42] 541 P.2d 717 (Alaska 1975).

[43] 388 P.2d 261 (Alaska 1964).

both cases we discussed "reviewing a trial court's exercise of discretion"[44] to determine whether "[t]he circumstances which would require our intervention . . . exist[ed]."[45] Appellate intervention is reserved for situations in which "evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."[46] The standard trial courts use to evaluate motions for new trials is much more dedicated to their discretion.

### 3. A "definite and firm conviction that a mistake has been made" and references to "reasonable jurors" are used in other appellate contexts.

We have used the phrase "a definite and firm conviction that a mistake has been made" to explain our standard of review in appellate contexts. It is most prominently the test for finding clear error in a superior court's factual findings.[47]

When one party moves for a directed verdict or a judgment notwithstanding the verdict, we have directed trial courts to consider whether the evidence favorable to the non-moving party is sufficient to allow a "reasonable juror" to find for that non-moving party.[48] If so, the trial court is to deny the motion. This is another way of directing "a trial court to view the evidence in the light most favorable to the non-moving

---

[44] *Sloan*, 541 P.2d at 724.

[45] *Ahlstrom*, 388 P.2d at 262.

[46] *Id.*

[47] *See, e.g.*, *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 221 (Alaska 2014).

[48] *See, e.g.*, *Cameron v. Chang-Craft*, 251 P.3d 1008, 1018 (Alaska 2011).

party. By contrast, a trial court may set aside a verdict and order a new trial in the interest of justice if the verdict is against the weight of the evidence."[49]

### 4. The superior court's orders did not correctly synthesize the standard trial courts should use to decide motions for new trial.

With the principles and precedent discussed above in mind, we move to analyzing the three orders on the new trial motion issued by the superior court in this case. Based on the analysis presented above, we conclude that the superior court's attempts to clarify the applicable standard for a new trial motion resulted in a formulation that is inconsistent with our cases on this issue. Because this attempt at clarification resulted in application of an incorrect standard, we remand for a renewed consideration of Hunter's motion for a new trial based on the weight of the evidence under the correct standard.

### a. The first order identified the correct "weight of the evidence" new trial standard.

The superior court's first order identified the correct standard for "weight of the evidence" new trial motions. It correctly explained that a trial court tasked with ruling on a motion for a new trial "need not view the evidence in the light most favorable to the non-moving party," and quoted *Kava*'s requirement that the court "use its discretion and independently weigh the evidence."[50] It then proceeded to perform that independent evaluation and conclude that a new trial was warranted. For reasons discussed below, we do not directly reinstate this conclusion; nonetheless, the superior court's approach and distillation of the legal test were correct in its first order.

---

[49] *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1176 (Alaska 2002) (footnote omitted).

[50] *Id.*

## b.     The second order incorrectly stated the "weight of the evidence" new trial standard.

In the superior court's second order, which vacated the original grant of a new trial, the court concluded that

> a trial court may only grant a motion for a new trial pursuant to Civil Rule 59 if, after independently evaluating all of the evidence in effect as the thirteenth juror, the court concludes that the weight of the evidence preponderates so heavily against the verdict that the court is left with the definite and firm conviction that a mistake has been made.

This standard is inconsistent with the standard established in *Kava*.

The phrase "preponderates heavily against the verdict" derives from our approving quotation of a treatise on federal *criminal* procedure in *Dorman v. State*.[51] We have not used this phrase in any of our discussions of the new trial standard since that case because, as the superior court recognized, decisions from the court of appeals that

---

**51**     *See Dorman v. State*, 622 P.2d 448, 454 (Alaska 1981) (quoting 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 533 (1969)); *see also White v. State*, 298 P.3d 884, 885-86 (Alaska App. 2013) ("[E]ven when the judge personally disagrees with the jury's verdict, this does not, by itself, warrant the judge in ordering a new trial.  Rather, 'a judge should vacate a jury's verdict and grant a new trial under [Alaska] Criminal Rule 33 only when the evidence is so one-sided that the jury's contrary view of the case is plainly unreasonable and unjust.' . . . A judge deciding a motion for a new trial is not supposed to ask whether there is any conceivable evidentiary basis for the jury's decision.  Rather, the judge is supposed to independently assess the weight of the evidence and the credibility of the witnesses.  Then, if the jury held a contrary view of the case, the judge must ask whether (in the judge's assessment) the evidence is so one-sided 'that the jury's contrary view of the case is plainly unreasonable and unjust,' even though there might be some conceivable view of the evidence that would provide a legal justification for the jury's verdict — *i.e.*, even though it would have been improper for the judge to have granted a motion for a directed verdict (in a civil case) or for a judgement of acquittal (in a criminal case)." (internal alteration omitted) (quoting *Taylor v. State*, 262 P.3d 232, 234 (Alaska App. 2011))).

interpret Alaska Criminal Rule 33 do not bind the trial court in a civil case. Thus, this phrase has not appeared in our discussion in any appeal of a civil matter. We have repeatedly affirmed that *Kava* provides the standard for trial courts to use in new trial motions based on an argument that the verdict was against the weight of the evidence, and co-mingling that guidance with cases interpreting Criminal Rule 33 threatens to obscure more than it clarifies. Since our decision in *Kava*, we have not had occasion to decide whether its standard for "weight of the evidence" new trial motions applies to criminal cases as well as civil cases, and that question is not before us in this appeal.

The second order's reference to a "definite and firm conviction that a mistake has been made" is also wrong. As discussed in Part IV.A.3 above, we use this phrase to explain our appellate review for clear factual errors. Enacting it as part of the standard trial courts apply to "weight of the evidence" motions for new trials would have one of two undesirable consequences: It would either tie these disparate judicial circumstances together, or it would result in the same phrase having two starkly different meanings. Eliminating the phrase in the context of new trial motions avoids both of these flaws.[52]

---

[52] Additionally, the second order's understanding that we had approvingly cited the "definite and firm conviction" language in *Kava* was incorrect. Footnote 15 of *Kava*, which the superior court emphasized, followed this sentence: "A court may set aside a verdict as being against the weight of the evidence even when 'there is substantial evidence to support it.'" *Kava*, 48 P.3d at 1176. The citation in footnote 15 specifically cited page 65 of the second volume of the second edition of Wright & Miller's Federal Practice and Procedure. *Id.* at 1176 n.15. That page contains the language the *Kava* court quoted. *See* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed. 1995). The phrase "definite and firm conviction" does not appear for another ten pages, *see id.* at 75, in a portion of the treatise that we have not before cited.

The second order also contained references to what evidence "a rational juror could . . . accept" and what testimony "a reasonable jury could have decided to believe." This portion of the order may not have been necessary to support the conclusion that a new trial was not justified; the views of a reasonable juror were not part of the new trial standard the superior court articulated. Nonetheless, trial courts primarily evaluate what a reasonable juror could believe when passing on a litigant's motion for a directed verdict or a judgment notwithstanding the verdict.[53] Such motions are requests to withdraw an issue from jurors' consideration altogether and are appropriately judged by a more skeptical standard than are requests for new trials.[54] Mixing the standards together does not produce an accurate clarification of the new trial standard. The superior court's attempts to determine the best way to implement the correct test, although thoughtful and comprehensive, led it to announce a standard inconsistent with our decisions in this field.

### c. The third order incorrectly added a new step to the "weight of the evidence" new trial standard.

The superior court's third order adhered to the reasoning and legal standard found in its second order. As discussed above, this standard subtly but significantly diverged from the test we endorsed in *Kava*.

The third order also explained the second order's use of the phrases "rational juror" and "reasonable jury." It explained that evaluating what such a juror could rationally believe was required in order to determine whether the verdict was supported by substantial evidence. Without such a determination, the superior court wrote, "a court cannot ascertain whether the jury made an error."

---

[53] *See, e.g.*, *Cameron*, 251 P.3d at 1017-18.

[54] *See Kava*, 48 P.3d at 1176.

This explanation adds an unnecessary step to a trial court's evaluation of a motion for a new trial. As we stated in *Kava*, "[a] court may set aside a verdict as being against the weight of the evidence even when 'there is substantial evidence to support it.' "[55] Substantial evidence to support the verdict is a condition that does not preclude a grant of a new trial; it is not a prerequisite to granting a new trial or a condition that triggers a different standard for evaluating a new trial motion.

### 5. The first order is not controlling.

Although, as discussed above in Part IV.A.4.a, the first order did correctly look to *Kava* for the applicable new trial standard, we remand this matter to the superior court for further proceedings. We do not directly reinstate the first order, despite the invitation to do so found in the superior court's second order, and instead remand for four reasons.

First, the superior court had, and continues to have, the discretion to reconsider its evaluation of the weight of the evidence and the requirements of justice. Philip Morris's motion to reconsider the first order challenged both the legal standard applied by the superior court and the substance of the court's finding that the jury's verdict was contrary to the weight of the evidence. Although its argument as to the legal standard was incorrect, Philip Morris was nonetheless entitled to protest the superior court's weighing of the evidence, and the superior court retains the discretion to reconsider that determination.

The superior court's order vacating the grant of a new trial discussed not only the applicable legal standard but also Philip Morris's "considerable evidence" to support the verdict and the ambiguity regarding what statements the jury may have found

---

[55]    *Id.* (quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed. 1995)).

false or misleading. Because the superior court considered not only legal argument but also re-weighed the evidence in its second order, we will not resurrect and reinstate its vacated first order, which may have depended on a view of the weight of the evidence to which the superior court no longer subscribed after its reconsideration.

Second, the final order, denying Hunter's motion to reconsider the second order, identified *Kava* as the source of the legal standards the court applied "in both its order granting the motion for new trial and then its order denying the motion for new trial." As discussed above, the standard articulated in the order denying the motion for new trial varied from the *Kava* standard. Nonetheless, the third order's recognition of *Kava* as the controlling standard throughout makes it inappropriate for us to reinstate the first order on that same basis.

Third, the original new trial order may have relied on the superior court's understanding that Philip Morris had "admitted at oral argument [that] Mr. Francis switched to light cigarettes because they were less harsh and because he thought they were better for him." Philip Morris contested whether its counsel had made such an admission in its motion to reconsider and again before this court. On remand, the superior court will be in a better position to determine what role, if any, this aspect of the case should play in evaluating whether the interest of justice requires a new trial.

Finally, there is a continuing ambiguity as to the precise meaning of the superior court's later characterization of its first order as "a *de novo* review of the evidence." To review de novo is to consider anew.[56] This is an appropriate description of a process that requires a trial court to take a "personal view of the evidence"[57] and

---

[56] BLACK'S LAW DICTIONARY 528 (10th ed. 2014).

[57] *Kava*, 48 P.3d at 1177.

"exercise its discretion and independently weigh the evidence."[58] However, at times the superior court's second and third orders seem to have used the designation "de novo" to suggest that its independent evaluation was aimed only at determining which side more persuaded the court, rather than whether the evidence so weighed against the verdict that the interest of justice required a new trial. In combination with the other reasons discussed above, the superior court's ambiguous but disapproving description of its first order as "a *de novo* review" makes remand more appropriate than a direct order of a new trial.

## B. False Evidence

Hunter's second argument on appeal is that the superior court erred when it determined that its evidentiary rulings did not provide a basis for a new trial. Because the superior court acted within its discretion in not granting a new trial on these grounds, we affirm this portion of the order.

The superior court's refusal to grant a new trial on evidentiary grounds came in its first order, which applied the correct *Kava* legal standard. When we review the substance of a trial court's denial of a new trial, as opposed to its interpretations of law, "[w]e will not interfere with the trial court's discretion except in the most exceptional circumstances and to prevent a miscarriage of justice."[59] This deferential standard of review stems from the same respect for trial courts' discretion that counsels against offering overly detailed explanations of when the interest of justice requires a

---

[58]    *Id.*

[59]    *Mullen v. Christiansen*, 642 P.2d 1345, 1348 (Alaska 1982); *see also Cameron v. Chang-Craft*, 251 P.3d 1008, 1022 (Alaska 2011) ("We . . . will only reverse a decision to deny a new trial if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust." (quoting *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006))).

new trial. The "wrongful manipulation of the evidentiary record" that Hunter alleges is not, in this case, an exceptional circumstance that will justify reversing the trial court's decision.

The large majority of Hunter's argument to the superior court at trial and in her motions for a new trial following the verdict centered on the superior court's refusal to allow her counsel to cross-examine Dr. Lipowicz with Judge Kessler's findings. Throughout, the superior court adhered to its pre-trial ruling that Judge Kessler's findings were hearsay and inadmissible. In its order rejecting this ground for a new trial, the court further found that any error in that ruling was harmless.

The superior court's evidentiary rulings regarding Judge Kessler's order do not invite, much less require, us to take the unusual step of reversing the substance of a trial court's denial of a new trial. The superior court acted well within its discretion to manage the trial when it excluded Judge Kessler's findings as hearsay, especially in light of the potential for confusion that would attend any attempt to persuade the jury by reference to a different fact-finder's determination in a similar case.[60] Moreover, the superior court's judgment that any error was harmless because "Judge Kessler's injunction was stayed at the time that the descriptor was removed," and therefore "Dr. Lipowicz . . . would have testified truthfully that the injunction played no direct role in the decision to remove the descriptor," is well-founded.

Before the superior court, Hunter made limited reference to the Congressional findings with which she now claims she should have been permitted to cross-examine Dr. Lipowicz. The motion she submitted between the two days of Dr. Lipowicz's testimony recounts some of Congress's findings about smokers' mistakes regarding the safety of "light" cigarettes, but the only relief specifically requested was

---

[60]     *See* Alaska R. Evid. 403.

"a corrective statement to the jury in accordance with Judge Kessler's injunction." Hunter did not refer to Congress's findings in her first motion for a new trial, nor in her reply to Philip Morris's opposition to that motion. Even in her supplemental briefing after oral argument before the superior court on her new trial motion, Hunter mostly focused on the ways that Congress's findings "mirror those of Judge Kessler," and the extent to which Judge Kessler's decision "was an impetus for Congress passing the Family Smoking Prevention and Tobacco Control Act."

The superior court's decision not to grant a new trial on the basis of its exclusion of the Congressional findings does not amount to the requisite "most exceptional circumstance[]" justifying our interference with that denial.[61] The only Congressional finding Hunter referenced in her motion during Dr. Lipowicz's testimony was the finding that "many smokers mistakenly believe that 'low tar' and 'light' cigarettes cause fewer health problems than other cigarettes."[62] Congress attributed this finding to the National Cancer Institute.[63] Although Hunter's counsel was unable to reference Congress's findings, he was able to cross-examine Dr. Lipowicz using the National Cancer Institute report that documented that mistaken belief. Hunter's counsel also read aloud the Institute's conclusion that the existence and marketing of low yield cigarettes may have increased the number of deaths due to smoking by encouraging smokers with health concerns to switch rather than quit altogether. The fact that he could

---

[61]     *Mullen*, 642 P.2d at 1348.

[62]     Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 2(38), 123 Stat. 1776, 1780 (2009).

[63]     *See id.*

not also establish that Congress was aware of and credited the same document is not a basis on which we will reverse the superior court's denial of Hunter's new trial motion.[64]

## V.  CONCLUSION

The superior court's ruling denying a new trial on the issue of evidentiary restrictions during cross-examination is AFFIRMED.  The superior court's new trial ruling on the issue of the weight of the evidence, as announced in its second and third orders, is REVERSED; we REMAND for proceedings consistent with this opinion.

---

[64]  We emphasize that both the highly deferential standard of review applicable to denials of new trial motions and Hunter's successful admission of related evidence are central to our holding in this case, and that we do not need to decide whether legislative findings generally constitute admissible evidence.