*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TOMMIE PATTERSON, | ) | |
| | ) | Supreme Court No. S-14853 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-11817 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SHEILA COX and FORD MOTOR COMPANY, | ) | |
| | ) | No. 6905 – May 9, 2014 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Tommie Patterson, pro se, Anchorage, Appellant. John R. Dean, Law Office of John R. Dean, Anchorage, for Appellee Sheila Cox, and John B. Thorsness, Clapp, Peterson, Tiemessen, Thorsness & Johnson LLC, Anchorage, for Appellee Ford Motor Company.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating.]

BOLGER, Justice.

I.     INTRODUCTION

Tommie Patterson's 1997 Ford Explorer was struck from behind when he braked to avoid a car stalled in his lane of travel on Gambell Street in Anchorage. He sued the owner of the stalled vehicle and subpoenaed her for trial, but she refused to appear. We conclude that the superior court should have issued a warrant or an order to show cause to compel the appearance of this party. In addition, the superior court

instructed the jury on Patterson's products liability claim against Ford Motor Company, but this claim was erroneously omitted from the special verdict form. We reverse the superior court's judgment and remand for a new trial.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Early in the morning of December 11, 2006, Sheila Cox was traveling south on Gambell Street in Anchorage when her Dodge Neon ran out of gas. Cox left her car in the road while she went to a nearby gas station. It is disputed whether Cox pulled over to the right or turned on her warning lights after she stopped.

At about the same time, Tommie Patterson was also traveling south on Gambell Street, returning home from work. He was driving his 1997 Ford Explorer behind a truck in the right southbound lane. When he passed Fifteenth Street, the truck signaled and merged into the left lane. Immediately afterwards, Patterson saw Cox's car stopped in the right lane ahead of him, but he had no time to merge left to avoid it. Patterson stopped his vehicle as quickly as he could. It is unclear from the record whether he struck the back of the Neon, but Katie Rutledge, who was driving behind Patterson, rear-ended Patterson's SUV after Patterson braked. Patterson testified that, although his seatbelt was on before the accident, it came unlatched during the collision.

When Cox returned with gas, she noticed that two SUVs had collided immediately behind her car. She left the scene of the accident after she observed that her own car had not been damaged.

### B.    Proceedings

Patterson filed suit against Cox and Ford Motor Company in the Anchorage superior court.[1]    In his complaint against Cox, Patterson alleged that Cox acted

---

[1]    Patterson also sued Rutledge, the driver of the vehicle that rear-ended
(continued...)

negligently when she left her car in a traffic lane.  As to Ford, Patterson alleged that,

when Rutledge's vehicle struck his, Patterson's "seatbelt failed causing plaintiff severe

bodily injury, including but not limited to his neck[,] left shoulder[,] and back."

After receiving several adverse rulings during pre-trial motion practice,

Patterson filed multiple motions asking Superior Court Judge William F. Morse to recuse

himself.  Judge Morse denied all of these  motions.  His decision not to recuse himself

was reviewed and upheld by two other superior court judges.

Patterson's claims against Cox and Ford were tried in front of a jury from

August 7 to August 17, 2012.  Although Patterson sought to have Cox testify, Cox

disobeyed a subpoena and never appeared.  Several times during trial, Patterson asked the

superior court to address Cox's failure to appear.  When the court mentioned that it could

"sen[d] a trooper out and have her arrested," Patterson seemed to approve, and he became

frustrated when the court decided not to issue a bench warrant.  He insisted that "if Ms.

Cox is under subpoena, she should appear."

In the end, the superior court decided to give a curative jury instruction as

a remedy for Cox's failure to appear:

> [P]laintiff, Tommie Patterson, issued a subpoena to defendant,
> Sheila Cox, requiring her to appear and testify at trial. Cox did
> not comply with the subpoena and did not testify. In
> evaluating the evidence you may consider the failure of Cox
> to appear and testify. You may, but need not determine that if
> Cox had testified her testimony would have been helpful to
> Patterson. You may, but need not consider the absence of Cox
> and the likelihood that her testimony would have been
> favorable to Patterson in deciding whether Patterson has met
> his burden of proof as to Cox.

---

[1](...continued)
Patterson's SUV, but the parties settled that claim before trial.

Patterson did not object to this instruction.

At the end of trial, the superior court submitted instructions and a special verdict form to the jury. The verdict form asked the jury to answer the following questions regarding liability:

>    (1)    Was defendant Sheila M. Cox negligent?
>
>    . . . .
>
>    (3)    Was defendant Ford Motor Company negligent?

The jury unanimously answered both questions "No." Based on the jury's verdict, the superior court entered judgment in favor of the defendants. Patterson now appeals.

## III.    DISCUSSION

### A.    The Special Verdict Form Provided To The Jury Was Plainly Erroneous.

Patterson argues on appeal that "[t]he Superior Court's instructions to the jury were probative, confusing, and misunderstood; and were designed in favor of the Appellees to prejudice Appellant." We normally review jury instructions de novo.[2] However, as Ford points out in its brief, Patterson did not object to the jury instructions during trial. Therefore, we review the instructions for plain error only.[3]

"[P]lain error exists when the jury instruction obviously created a high likelihood that the jury would follow an erroneous theory resulting in a miscarriage of justice."[4] But even a plain error will not be grounds for reversal if it is harmless.[5]

---

[2]    *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005).

[3]    *Roderer v. Dash*, 233 P.3d 1101, 1110 (Alaska 2010).

[4]    *Khan v. State*, 278 P.3d 893, 896 (Alaska 2012) (internal quotation marks and alterations omitted).

[5]    *See Sowinski v. Walker*, 198 P.3d 1134, 1160 (Alaska 2008) ("To overturn
(continued...)

Patterson argues that the superior court "erred by never instructing the jury on product defect or manufacture defect of the seat and seatbelt." Although the superior court did in fact instruct the jury on products liability, our review of the record reveals that the special verdict form mischaracterized the law applicable to this case. In his complaint, Patterson alleged that, after Rutledge's car collided with his vehicle, his "seatbelt failed causing [him] severe bodily injury." Because the pleadings of pro se litigants are held to a less stringent standard than those of lawyers,[6] this allegation was sufficient to state a claim sounding in negligence and strict products liability.[7] And this is how the parties litigated Patterson's claim against Ford at trial.

Patterson requested a verdict form that included questions regarding his products liability claim. But the superior court adopted a form similar to Ford's proposal. With respect to Ford's liability, the verdict form asked the jury only: "Was defendant Ford Motor Company negligent?" The form included no question about strict products liability. Therefore, even if the jury would have found for Patterson based on a strict

---

[5](...continued) a jury instruction or special verdict form, we must conclude not only that the instruction or special verdict form was legally erroneous, but also that the verdict would probably have been different but for the error.").

[6]     *See Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003) ("It is well settled that in cases involving a pro se litigant the superior court must relax procedural requirements to a reasonable extent.").

[7]     *Cf. Wilkerson v. State, Dep't of Health & Soc. Servs.*, 993 P.2d 1018, 1021-22 (Alaska 1999) (pro se litigant's constitutional claims were properly presented, even where his arguments were "conclusory" and he "failed to identify or apply the tests courts use in reviewing the constitutionality of laws.").

products liability theory, the form provided no opportunity for it to do so. For that reason, the special verdict form was plainly erroneous.[8]

Of course, if no reasonable jury could have found for Patterson on his products liability claim, the superior court's omission would be harmless.[9] But the superior court denied Ford's motion for a directed verdict on this issue. Based on our review of the record, we are not convinced that the evidence was insufficient to support a verdict in Patterson's favor. Therefore, we are compelled to conclude that the omission of Patterson's strict products liability claim from the special verdict form was plain, prejudicial error and that his claims against Ford must be remanded for a new trial.

**B.     The Superior Court Should Have Issued A Warrant Or An Order To Show Cause To Secure Cox's Appearance At Trial.**

On appeal, Patterson renews his argument that the superior court should have issued a bench warrant to compel Cox to appear at trial. We review the application of rules of procedure[10] and statutes[11] de novo.

---

[8]     *Joseph v. State*, 26 P.3d 459, 477 (Alaska 2001) (special verdict form was erroneous where, contrary to law, it did not permit the jury to consider whether state officials were negligent in preventing a prisoner's suicide if the jury found that the suicide was intentional); *see also Sowinski*, 198 P.3d at 1163 (special verdict form was erroneous where it permitted the jury "to award [plaintiff] damages to which she was not entitled under a [negligent infliction of emotional distress] theory").

[9]     *See McBride v. Sears, Roebuck & Co.*, 235 N.W.2d 371, 374 (Minn. 1975) (declining to reach claims about jury instructions and special interrogatories because "the evidence was, as a matter of law, insufficient to support a verdict for the plaintiff").

[10]     *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 165 P.3d 605, 612 n.18 (Alaska 2007).

[11]     *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 483 (Alaska 2006).

Alaska Rule of Civil Procedure 90(b) provides

> For every contempt other than [contempts subject to summary punishment], upon a proper showing on ex parte motion supported by affidavits, the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why the accused party should not be punished for the alleged contempt, or shall issue a bench warrant for the arrest of such party.

The failure of a witness to obey a subpoena is a contempt of court.[12] Therefore, when a party makes a proper showing that a witness has disobeyed a subpoena, the trial court should issue an order to show cause or a bench warrant for the arrest of the witness.

Patterson did not submit a formal motion requesting that the court hold Cox in contempt. But when the court told him that it could have Cox arrested and brought to the courthouse, Patterson approved of that suggestion. And when the court indicated that it was not inclined to provide that remedy, Patterson expressed frustration. He insisted that "if Ms. Cox is under subpoena, she should appear." Because Alaska courts "relax some procedural requirements" in cases involving pro se litigants,[13] the superior court should have treated these statements as a proper request that the court invoke its contempt power to enforce Cox's subpoena. We conclude that the failure of the superior court to issue an order to show cause or a bench warrant was error.

Cox argues that any error was harmless because the superior court permitted the introduction of a recorded statement made by Cox before trial and issued a curative jury instruction. But the recorded statement was very favorable to Cox. And it is at best

---

[12]     AS 09.50.010(10) ("[D]isobedience of a subpoena duly served, or refusing to be sworn or answer as a witness" is a contempt of court.); Alaska R. Civ. P. 45(f) ("Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.").

[13]     *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002).

speculative that the curative instruction — which provided that the jury "may" draw an adverse inference from the fact that Cox did not testify — had the same effect on Cox's credibility as compelling her to testify in front of the jury. Live testimony is especially important where, as here, the resolution of factual issues depends on the relative credibility of the witnesses.[14] Because the jury's determination whether Cox was negligent could very well have turned on whether it believed her statements, there is a significant risk that the court's curative instruction was an inadequate substitute for live testimony.

Because the failure to issue a bench warrant to secure Cox's presence at trial was prejudicial error, we reverse and remand Patterson's claims against Cox for a new trial.

### C.  Patterson's Recusal Motions Were Properly Denied.

Patterson also argues that the trial judge was biased against him and should have been disqualified from presiding over his case.[15] A judge's conclusion that he is capable of conducting a fair trial is reviewed for abuse of discretion.[16]

Patterson alleges that the trial judge represented him in 1982, when the trial judge was at the public defender's office, and that this prior representation disqualified

---

[14]    *Cf. Bonamarte v. Bonamarte*, 866 P.2d 1132, 1136 (Mont. 1994) (limitations on cross-examination are only permissible where a case does not turn on credibility determinations).

[15]    *Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013) ("A judge must recuse himself or herself if there is bias."); *see also* AS 22.20.020(a) (listing grounds for judicial disqualification).

[16]    *Hymes v. DeRamus*, 222 P.3d 874, 880 (Alaska 2010); *see also Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012).

him from presiding over this case.[17] In his order denying Patterson's recusal motion, the trial judge wrote, "I do not recall having ever represented Patterson, although it is possible that, as an assistant public defender, I filled in for another attorney on a matter involving Patterson."

But even if it is true that the trial judge represented Patterson in the 1980s, Alaska law does not require recusal. Alaska Statute 22.20.020(a)(5) provides that "[a] judicial officer may not act in a matter in which . . . a party, except the state or a municipality of the state, has retained or been professionally counseled by the judicial officer as its attorney within two years preceding the assignment of the judicial officer to the matter." Patterson alleges that the trial judge represented him in 1982, which was 26 years before Patterson filed the complaint in this case.

Patterson also claims that the trial judge displayed "racial hate" for Patterson, both when the trial judge allegedly represented Patterson as a public defender and during this trial. And he alleges that the trial judge was involved in a "conspiracy" with counsel for Ford and was taking bribes from the defendants. But Patterson offered no evidence to substantiate these allegations, and the record reveals none.

Patterson also alleges that the trial judge's bias was evident from his "relentless favoritism in granting motions and pleadings for" Ford and Cox. "But a ruling against a party, even an incorrect ruling, is not evidence of judicial bias."[18]

---

[17] To support this allegation, Patterson relies on an affidavit submitted by Yvette M. Richards, Patterson's former girlfriend. However, the Richards affidavit demonstrates only that *Richards* was represented by William Morse in 1982.

[18] *Peterson v. Swarthout*, 214 P.3d 332, 339 (Alaska 2009).

Therefore, the fact that the trial judge frequently ruled against Patterson does not, by itself, demonstrate that recusal was required.[19]

Finally, Patterson argues that the trial judge should have recused himself because his participation in the trial created the appearance of bias.[20] We review "a request for disqualification of a judge based on the appearance of impropriety" de novo.[21] Importantly, where "a party alleges the appearance of bias, a 'greater showing' is required for recusal."[22] Patterson does not make that showing.

The trial judge acknowledged that his continued participation in the case "may raise concerns about the appearance of impropriety in that reasonable persons could question whether I could remain impartial in light of such serious allegations by Patterson." But requiring a judge to recuse himself merely because one party has made extreme and baseless accusations against that judge would make it easy for a persistent litigant to secure a recusal that would not otherwise be required. And, as the trial judge noted, to require recusal under these circumstances would be to reward "intemperate and

---

[19]     *Id.* ("[W]hen a party seeks a judge's recusal for bias, he or she must show that the judge's actions were the result of personal bias developed from a nonjudicial source." (internal quotation marks omitted)).

[20]     *See Greenway*, 294 P.3d at 1063.

[21]     *Griswold v. Homer City Council*, 310 P.3d 938, 941 (Alaska 2013).

[22]     *Greenway*, 294 P.3d at 1063 (quoting *Lacher v. Lacher*, 993 P.2d 415, 420-21 (Alaska 1999)); *see also* Alaska Code Jud. Conduct 3(E)(1) ("[A] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . .").

unfounded behavior." Therefore, the trial judge's recusal was not necessary to avoid the appearance of impropriety.[23]

## V.    CONCLUSION

We REVERSE the superior court's judgment and REMAND for a new trial.

---

[23]    Patterson's appellate brief makes several other allegations of prejudicial error. Because we reverse the superior court's judgment on the grounds discussed above, we do not reach these other arguments.