NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TOMMIE PATTERSON, | ) | |
| | ) | Supreme Court No. S-15998 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-11817 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SHEILA COX and FORD MOTOR | ) | AND JUDGMENT* |
| COMPANY, | ) | |
| | ) | No. 1657 – November 29, 2017 |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Tommie Patterson, pro se, Anchorage, Appellant. John R. Dean, Law Office of John R. Dean, Anchorage, for Appellee Sheila Cox. John B. Thorsness, Clapp, Peterson, Tiemessen, Thorsness & Johnson LLC, Anchorage, for Appellee Ford Motor Company.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

1.     Tommie Patterson filed a lawsuit against Sheila Cox, Katie Rutledge,[1] and Ford Motor Company based on a December 2006 car accident. He claims that while driving his 1997 Ford Explorer he stopped to avoid Cox's vehicle in front of

---

*     Entered under Alaska Appellate Rule 214.

[1]     The claim against Rutledge was settled before trial. *Patterson v. Cox*, 323 P.3d 1118, 1120 n.1 (Alaska 2014).

him and that his seatbelt failed when Rutledge's vehicle subsequently rear-ended him, severely injuring him.[2]  The case was tried to a jury in August 2012 and the jury found that Cox and Ford were not negligent.[3]

Patterson appealed, and we reversed and remanded on two grounds: (1) the failure to issue a bench warrant to secure Cox's presence at trial and (2) the omission of Patterson's strict products liability claim from the special verdict form.[4]  We addressed and rejected Patterson's argument that the trial judge should have recused himself based on actual or apparent bias.[5]

After trial on remand, the jury found by 11 to 1 that Cox was not negligent, unanimously found that Ford was not negligent, and found that the seatbelt buckle was not defective.  Patterson again appeals, asserting claims regarding jurors, evidence, testimony, jury instructions, the judge's refusal to recuse himself, and attorney's fees.  We conclude that Patterson's claims have no merit and we affirm the judgment.

2.      Patterson's first claim regarding jurors pertains to alleged ex parte communication between the trial judge and Juror No. 5.  The juror left a voice message on the judge's chambers telephone, informing the judge that she was ill and would not be able to come in that day.  The judge did not speak with her, and the communication was "wholly unrelated to the substantive legal or factual issues of the trial."[6]  The judge immediately informed the parties about the voice message and its contents, and it does

---

[2]      *Id.* at 1119-20.

[3]      *Id.* at 1120.

[4]      *Id.* at 1120-22.

[5]      *Id.* at 1122-23.

[6]      *Collins v. State*, 182 P.3d 1159, 1165 (Alaska App. 2008) (Mannheimer, J., concurring) (quoting *People v. Harris*, 559 N.E.2d 660, 662 (N.Y. 1990)).

not appear that Patterson objected to the communication at the time. Patterson waived his argument by failing to raise it until appeal,[7] and even if it were not waived, he has shown neither error nor harm and therefore has not met his burden of proof.[8]

        3.      Patterson's second claim regarding jurors is that the judge allowed attorneys for Cox and Ford to tamper with Juror No. 5 and two alternate jurors. Patterson provides no support for his claims regarding Cox's attorney or Juror No. 5. His allegation regarding one of Ford's attorneys and two alternate jurors is based the attorney having spoken to the two alternate jurors after their release from jury duty and on the incorrect assertion that the judge had not yet stated that those jurors were released. The transcript from the previous day's hearing clearly reflects that the alternate jurors had been excused from jury duty, and the superior court did not abuse its discretion[9] in permitting the attorneys and Patterson himself to talk with them after their release.[10]

---

     [7]     *See Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the first time on appeal."); *see also Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 570 (Alaska 2015) ("We review previously unraised issues only for plain error, which 'exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " (quoting *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013))).

     [8]     Ex parte contact between the judge and jury is reviewed under a harmless error standard. *Frontier Cos. of Alaska. v. Jack White Co.*, 818 P.2d 645, 652-53 (Alaska 1991). The party alleging error "bears the burden of proving both error and harm." *Id.* at 653.

     [9]     *Norris v. Norris*, 345 P.3d 924, 928 (Alaska 2015) ("We review the superior court's procedural decisions for abuse of discretion.").

     [10]     The judge explained to Patterson that "it's appropriate to talk to released jurors." Likewise, the Alaska Bar Association, in its response to an attorney grievance filed by Patterson, explained that "interview[ing] jurors after their discharge" is "a common practice of trial attorneys" and does not constitute "improper conduct" or "jury

(continued...)

4.     Patterson's third claim regarding jurors is that the judge erred by allowing a prospective juror to return to the courtroom after a voir dire conference.[11] Patterson claims that the prospective juror, who was excused after the conference, tainted the jury by rampaging against him and using a racial slur in front of the remaining prospective jurors.  Despite Patterson's allegations, the record reveals no rampage or racial slurs by the prospective juror.  The transcript reflects only that the prospective juror talked to one of the other prospective jurors upon reentering the courtroom and that Patterson immediately objected; after Patterson's objection, a prospective juror told the court, "She said she was leaving."  A two-part inquiry applies to allegations of juror misconduct: (1) does "the evidence establish[] a serious violation of the juror's duty, and if so," (2) did "the violation deprive[] the complaining party of a fair trial"?[12]  A serious violation "may be demonstrated by 'fraud, bribery, forcible coercion, or any obstruction of justice.' "[13]  No evidence of any violation has been proffered, and the record reveals no evidence of jury tainting or misconduct by the prospective juror.

5.     Patterson's fourth claim regarding jurors is that Patterson was denied the right to remove another prospective juror for cause, so he instead had to use one of

---

[10]     (...continued)
tampering."  We agree.

[11]     An on-record, voir dire conference was conducted in the judge's chambers, so the attorneys and Patterson could further question the prospective juror out of the presence of other prospective jurors.  This is a common and acceptable practice in the trial courts.

[12]     *Manrique v. State*, 177 P.3d 1188, 1191 (Alaska App. 2008) (first citing *West v. State*, 409 P.2d 847, 852 (Alaska 1966); then citing *Fickes v. Petrolane–Alaska Gas Serv.*, 628 P.2d 908, 910 (Alaska 1981)).

[13]     *Id.*  (citing *West*, 409 P.2d at 852).

his preempts in order to have her removed.[14]  He claims that the prospective juror in question was a friend of one of Ford's attorneys and of the attorney's family.  However, the record shows only a limited acquaintance by the prospective juror with two of the attorney's family members.[15]  Because "the amount of familiarity [did not rise] to the level of impropriety," the superior court denied Patterson's challenge for cause.  We reverse the "denial of juror challenges for cause 'only in exceptional circumstances and to prevent a miscarriage of justice,' "[16] and Patterson has demonstrated no such circumstances in this case.  Thus, the court did not abuse its discretion in denying Patterson's juror challenge for cause.

6.     Patterson's fifth claim regarding jurors concerns the quashing of three subpoenas that Patterson had sent to two former jurors from his first trial in this case.  He argues that the judge erred in treating a letter as a motion to quash a subpoena and that the judge was personally involved with one of the former jurors.  The superior

---

[14]     Although this issue is not included in the Notice of Appeal & Statement of Points on Appeal, it was raised at trial and briefed on appeal, and "opposing counsel are sufficiently apprised" of it, so we have discretion to consider it.  *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982).

[15]     The prospective juror acknowledged some familiarity with the attorney's name and indicated that she knew his father as a legislative aide and "knew [his] sister strictly as — in her rowing."  When asked whether "[a]nything [she knew] about [his] family . . . [would] have any effect on [her] deliberation on the evidence in this case," the prospective juror answered, "No."  *See Pralle v. Milwicz*, 324 P.3d 286, 291 (Alaska 2014) (holding that where two jurors had unfavorable or ambivalent opinions about chiropractors, which was relevant because the appellant's case relied on the testimony of a chiropractor, but both "affirmed that they could set aside their personal biases and decide the case on the evidence," it was not an abuse of discretion for the superior court to accept their assurances).

[16]     *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 21 (Alaska 2002) (quoting *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964)).

court did not abuse its discretion in quashing the subpoenas because the information Patterson sought to elicit about two former jurors allegedly having lied on their juror questionnaires in the first trial was irrelevant to the issues before the court in the second trial.[17] We do not decide whether it was error for the court to treat a letter from one of them as a motion to quash a subpoena because even if it were error, Patterson subpoenaed that particular former juror a second time, and she then filed a motion to quash the subpoena, which was granted. The allegation of personal involvement with a former juror appears to relate to a protective order against Patterson that the judge entered on her behalf; Patterson provides no support for this allegation, and the protective order is irrelevant to the proceedings in this case.

7. Patterson's sixth claim regarding jurors is that the judge intentionally excluded African Americans from the jury. Patterson provides no support for this claim beyond his bare assertion, thus waiving the claim due to inadequate briefing.[18]

8. Patterson's seventh claim regarding jurors is that a mistrial should have been declared because only 11 of the 12 jurors voted that Cox was not negligent. Under AS 09.20.100, "[i]n a civil case tried by a jury . . . five-sixths of the jury may render a verdict, which is entitled to the legal effect of a unanimous verdict at common law." Therefore, this claim is without merit.

9. Patterson's first claim regarding evidence is that the judge

---

[17] *See Gibson v. GEICO Gen. Ins. Co.*, 153 P.3d 312, 317 (Alaska 2007) ("The appropriate standard of review for evidentiary decisions is abuse of discretion." (quoting *Buster v. Gale*, 866 P.2d 837, 841 n.9 (Alaska 1994))).

[18] *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) (holding that an argument that was "given only a cursory statement in the argument portion of a brief" was waived due to inadequate briefing); Cf. Coppe v. Bleciher, 318 P.3d 369, 378-79 (Alaska 2014) (upholding a determination that certain issues were waived because the argument "lacked citation to authority or a legal theory to support it").

misinstructed the jury concerning allegedly falsified medical records entered as evidence. Patterson claims that attorneys for Cox and Ford falsified medical records; in support he alleges that the date of birth was changed on one document to make it look like it was his and that the medical reports lack headings for the doctor's office, hospital, or clinic. However, it does not appear that the referenced documents were admitted as evidence in the second trial. Ford claims never to have moved them into evidence, and the allegedly falsified medical records in Patterson's excerpt are not marked as exhibits. Thus, Patterson has failed to prove that the records were admitted, let alone falsified, and his claim is without merit.[19]

10. Patterson's second claim regarding evidence is that the judge erred by allowing Ford to place before the jury allegedly falsified documents about criminal charges against Patterson. His brief includes only two sentences about this claim, alleging that Ford submitted a falsified document to the jury and alleging that one of Ford's attorneys admitted telling the jury that Patterson was a felon and had been to prison. In support, he cites to a copy of a handwritten "Motion for Release During Pendency of Appeal," which is marked as an exhibit but not marked as having been admitted at trial. He fails to show that the document was falsified, fails to establish that it was submitted to the jury, and provides no support for his claim that the jury was told that he was a felon. Thus, his claim fails.

11. Patterson's third claim regarding evidence is that the judge erred by allowing a seat and a seatbelt buckle from a 2000 Ford Explorer to be presented to the

---

[19] Some information from those records came in through expert testimony by Dr. John Ballard. Dr. Ballard's reference to medical records not entered into evidence was permissible because experts are entitled to rely on evidence "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," even if the facts or data are not admissible in evidence. Alaska R. Evid. 703.

jury.[20] Patterson alleges that Ford told the jury the seatbelt was the same model and style as the seatbelt in his 1997 Ford Explorer. However, the record reveals no such misrepresentation. To the contrary, the record shows that when moving for admission of the seatbelt buckle, Ford specifically stated that it "pertains to the 2000 Explorer." When Patterson objected on the ground that it differed from the seatbelt in the 1997 Ford Explorer, Ford explained that "[t]hat will be our point." One of Ford's expert witnesses later testified that "[t]he seatbelt design changed in 1998 in the Ford Explorer." This evidence was relevant because of Patterson's argument that there was a recall for the 1997 seatbelt, to which Ford responded by indicating that the recall was actually for the 2000 model, which had a different design.[21] Thus, the superior court did not abuse its discretion in admitting this evidence.

12.     Patterson's first claim regarding testimony is that the judge and one of Ford's attorneys conspired to prevent Patterson from questioning an alleged expert witness from the first trial in front of the jury. This claim is based on the quashing of a subpoena that Patterson had issued. Although Patterson now claims that he was denied the right to an expert witness, he told the superior court that the subpoenaed individual was not his expert. Patterson also made it clear that he did not want the subpoenaed

_____

[20]     Under Alaska Evidence Rule 403 relevant "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The superior court's "decision to admit or exclude evidence solely as an application of a correctly interpreted rule of evidence to the facts of the instant case" is reviewed for abuse of discretion. *Sanders v. State*, 364 P.3d 412, 420 n.21 (Alaska 2015).

[21]     During the trial, it was repeatedly clarified that the information about a seatbelt recall that Patterson relied on was from a third-party website that erroneously listed the seatbelt recall as applicable to the 1997 Ford Explorer but listed the campaign number as 00V228001, which actually pertained to the 2000 Ford Explorer. Patterson argues that this was a lie but fails to identify any evidence supporting his position.

individual to testify about the results of his inspection of Patterson's car but rather about alleged lies at his deposition taken before the first trial and on the witness stand in the first trial, and about his alleged failure to give Patterson a written report after inspecting the car. The court asked what the anticipated testimony "ha[d] to do with whether or not Ford is responsible for [his] injuries," but Patterson failed to point to any relevant information. Alleged lies at the deposition and the first trial are irrelevant to the second trial when the witness in question is not called in the second trial; the subpoenaed individual's alleged failure to provide a written report is also irrelevant.[22] Thus, the court did not err in quashing the subpoena.

13. Patterson's second claim regarding testimony is that the judge erred by allowing Ford's witnesses to be present in the courtroom and listen to each other testify before being called as witnesses; Patterson avers that he was denied the right to remove the witnesses from the courtroom. It appears that Patterson requested the removal of only one of those three witnesses, William Ballard, who worked for Ford as an engineer, and that he later questioned why one of the others was allowed to watch Ballard testify. According to Ford, Ballard was its designated representative, which means that under Evidence Rule 615(2) he could not be excluded from the courtroom during the testimony of other witnesses at Patterson's request.[23]

The other two witnesses whom Patterson wanted excluded, Dr. John Lapkass and Dr. Daniel Toomey, were expert witnesses for Ford. Under Evidence Rule 615(3) witnesses may be allowed to remain in the courtroom despite a request to the contrary if they are "important to the presentation of the party's cause." In *Steward v.*

---

[22]   *See* Alaska R. Evid. 401.

[23]   Alaska R. Evid. 615(2) ("This rule does not authorize exclusion of . . . an officer or employee of a party which is not a natural person designated as its representative by its attorney.").

*State*, a negligence case, we held that the superior court erred in excluding from the courtroom an accident reconstruction expert witness during the investigating police officer's testimonywhere the expert's presence was important to the presentation of the plaintiff's case.[24]  We explained that the expert should have been allowed to hear the officer's testimony to verify it and to finalize any opinions relevant to it.[25]  In this case, Dr. Lapkass was a doctor hired by Ford to do an independent medical examination of Patterson, and Dr. Toomey was a biomechanical and kinematic expert.  Dr. Lapkass ultimately did not testify in person, but the transcript shows that Ford intended to call him as an expert witness, and a portion of his deposition was admitted and was repeatedly referenced in Ford's closing statement; regardless, it appears that Patterson never objected to his presence in the courtroom.  As to Dr. Toomey, when Patterson questioned his presence during Ballard's testimony, the superior court explained that it was permitted "[b]ecause there's a rule that says experts are allowed to do that."  All three witnesses in question were covered by exceptions to the rule excluding witnesses, and the superior court did not abuse its discretion in allowing them to remain in the courtroom.[26]

14.  Patterson's third claim regarding testimony is that the judge erred by allowing Cox and Ford to replace an expert witness used in the first trial, Dr. Jarrod Carter, with a new expert for the second trial, Dr. Toomey.  Patterson claims that Dr. Carter was replaced in order to cover up his alleged perjury in the first trial and that the change denied Patterson the constitutional right of confrontation.  The record shows that

---

[24]  322 P.3d 860, 864-65 (Alaska 2014).

[25]  *Id.* at 865.

[26]  *See O'Brannon v. State*, 812 P.2d 222, 226 (Alaska App. 1991) (citing *Schroff v. State*, 627 P.2d 653, 655-56 (Alaska App. 1981)).

Ford filed a motion informing the court that Dr. Carter was "unavailab[le] to testify at the new trial . . . through no fault of Ford" and asking for leave to substitute Dr. Toomey for Dr. Carter as its "accident reconstructionist and biomechanics expert," and the superior court granted the motion.[27] Patterson's only objection to the propriety of the substitution appears to be the claim that its purpose was to cover up the alleged perjury of the previous expert witness during the first trial. But the expert in the first trial was not called to testify in the second trial, rendering the alleged perjury irrelevant, and the record does not show that Patterson was precluded from fully cross-examining the new expert in the second trial. Regardless, the court's ruling allowing the substitution was not an abuse of discretion.

15. Patterson's fourth claim regarding evidence is that the judge erred by allowing Cox's attorney to testify for Cox, who is deceased.[28] Patterson claims that the attorney testified as though Cox were present in the courtroom and that the opening statement was testimonial and intended to mislead the jury. Contrary to Patterson's claim, the attorney clearly explained in his opening statement that Cox was deceased and therefore would not be present. Furthermore, Patterson fails to point to anything in the opening statement that was testimonial, and he did not object to the opening statement.

---

[27] Alaska Civil Rule 16(b) allows the scheduling order deadline for disclosing expert witnesses to be modified "upon a showing of good cause and by leave of court." The court's "decision to admit or exclude expert testimony" is reviewed for abuse of discretion. *Lynden Inc. v. Walker*, 30 P.3d 609, 612 (Alaska 2001).

[28] Patterson also objects to not having been permitted to enter evidence concerning Cox, her character, and her cause of death. However, that evidence was impermissible under Alaska Evidence Rule 404(a) because Patterson sought to use it as "[e]vidence of a person's character . . . for the purpose of proving that the person acted in conformity therewith."

Because he did not object, plain error review applies.[29] The attorney's opening statement did not "create[] a high likelihood of injustice."[30] Thus, this claim fails.

16. Patterson's fifth claim regarding evidence is that the judge erred by allowing Cox's attorney to use a blown-up verdict form and show the jury how to vote by marking "no" on the form.[31] However, Patterson provides no support for his contention that use of a blown-up verdict form for illustrative purposes is disallowed. His claim is without merit.

17. Patterson's sixth claim regarding evidence is that the judge erred by allowing Ford's expert witnesses William Ballard (who was also Ford's designated trial representative) and Dr. Toomey to provide medical testimony and that they were not qualified as scientists.[32] Despite Patterson's claim, none of Ballard's testimony appears

---

[29] *See City of Bethel v. Peters*, 97 P.3d 822, 830 (Alaska 2004) (citing *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 204 (Alaska 1980)).

[30] *Id.* (quoting *State Farm Mut. Auto Ins. Co. v. Weiford*, 831 P.2d 1264, 1270 (Alaska 1992)).

[31] Additionally, Patterson claims that Cox's attorney repeatedly told the jury that Patterson was not injured and should not be awarded anything. Patterson's claim misrepresents the record: in his closing argument, the attorney acknowledged that Patterson "probably" suffered "a little bit" of whiplash to his neck and "might have sprained [his] finger a little bit" and suggested that "maybe $1,800 might be a good amount to compensate someone for a six to eight-week whiplash or a sprained finger." The attorney suggested that if the jury found Cox negligent, it might want to put "up to 10 percent" for the percentage of fault to be allocated to Cox. Because the jury found no negligence by the defendants, the jury never reached the issue of damages.

[32] Expert testimony may be "based on technical or scientific research and testing" or "on practical experience in the relevant field." *Thompson v. Cooper*, 290 P.3d 393, 399 (Alaska 2012) (citing *Marsingill v. O'Malley*, 128 P.3d 151, 159 (Alaska 2006)). If "based strictly on 'scientific knowledge,' " expert testimony "is generally subject to *Daubert*'s reliability and relevance requirements." *Id.* (quoting *Daubert v. Merrell Dow*
(continued...)

to be medical testimony; Ballard's testimony focused instead on such topics as seatbelt buckles, the estimated speed of the collision, and recalls. Ballard's qualifications as an expert witness are set forth in the record, and he appears qualified to testify about those topics, considering his engineering degrees and thirty years of work experience for Ford. Dr. Toomey's testimony, which focused on biomechanics and the mechanics of the accident rather than medical testimony, likewise accords with Dr. Toomey's qualifications as an expert, which include "a Ph.D. in biomechanical engineering with an emphasis in impact biomechanics." Thus, Patterson's claim that these experts provided improper medical testimony is without merit, as is the claim that they are not qualified as scientists.

18. Patterson's first claim regarding jury instructions is that the judge erred by not including jury instructions about Marion Patterson's claim for loss of spousal consortium. However, Patterson's wife is not a party in this case and therefore could not bring a claim for loss of spousal consortium. Patterson also cannot bring the claim because "[t]he interest to be protected is personal to the wife," namely her own loss incident to an injury to her spouse.[33] Furthermore, even if she had been a party, the loss of spousal consortium claim would not have been reached because the jury found that the defendants were not negligent; thus, the alleged error would have been harmless.[34]

---

[32] (...continued)
*Pharm., Inc.*, 509 U.S. 579, 589-95 (1993)). However, Patterson does not appear to challenge the reliability and relevance of the testimony, instead focusing on questioning the qualifications of the experts themselves.

[33] *Schreiner v. Fruit*, 519 P.2d 462, 465-66 (Alaska 1974).

[34] *See Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 535 (Alaska 2011) (" 'In reviewing the superior court's ruling on jury instructions, we apply our independent judgment to determine whether the challenged or refused instruction states the law
(continued...)

This claim is without merit.

19.     Patterson's second claim regarding jury instructions is that the judge erred by instructing the jury that Cox and Ford had no burden of proof. Patterson claims that the judge's subsequent written response, which corrected that misinstruction, was confusing and that the judge intended for the jury to see the erroneous statement that had been crossed out. It is true that an erroneous statement — that "[t]he defendants have no burden of proof" — was included in the superior court's oral instruction to the jurors immediately before their dismissal for the day. But shortly thereafter Ford requested that the sentence be omitted because it recognized that it would have a burden of proof as to allocation of fault and seatbelt design if the jury were to find negligence or find that the seatbelt caused Patterson's injuries. The court corrected its error shortly after reconvening the jury by striking out the erroneous sentence and instructing the jury to disregard it. The jury therefore had little if any opportunity to deliberate based on the erroneous instruction. Additionally, the misinstruction was harmless under the circumstances of the case: because the jury found that neither Cox nor Ford was negligent and that the seatbelt buckle was not defective, the defendants ultimately had no issues to prove.[35] Because the court corrected the misinstruction in a timely manner

---

[34]     (...continued)
correctly.' 'Errors in jury instructions are not grounds for reversal unless the errors are prejudicial.' " (footnote omitted) (first quoting *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004); and then quoting *State v. Carpenter*, 171 P.3d 41, 54 (Alaska 2007))).

[35]     *Grimes v. Haslett*, 641 P.2d 813, 818 (Alaska 1982) ("An erroneous statement of law in a jury instruction will not constitute reversible error unless it prejudiced one of the parties." (citation omitted)).

and the error was not prejudicial, Patterson's claim fails.[36]

20. Patterson's third claim regarding jury instructions is that the judge gave the jury instructions only from Cox and Ford and that none of Patterson's claims or evidence was submitted or read to the jury. Aside from the spousal consortium claim, which is discussed above and inapplicable in this case, Patterson fails to identify any claims, jury instructions, or evidence allegedly not submitted to the jury, making review of this question impossible. Moreover, Patterson failed to include these arguments in his Notice of Appeal & Statement of Points on Appeal,[37] and his argument is lacking to the point that we conclude he has waived it due to inadequate briefing.[38]

21. Patterson's claim regarding recusal of the trial judge is that the judge should have recused himself from the second trial. Patterson argues that the judge had a special interest in Cox and Ford and that the judge should have been removed because

---

[36] Patterson also claims that Cox and Ford were allowed "to put in additional jury instructions in Ford's favor." The only additional instruction appears to be the note instructing the jury to disregard the sentence about the defendants having no burden of proof. This addition appears to favor Patterson rather than Ford. The superior court did give the defendants the opportunity to add "some affirmative instruction about . . . where the defendant does have a burden," but they declined.

[37] *See Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982) ("Ordinarily we will not consider issues that are not included in the appellant's statement of points on appeal.").

[38] *Cf. Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) ("In *Peterson v. Ek* we held that a pro se litigant's briefing was adequate to avoid waiver of his claims on appeal because, '[a]lthough [the appellant] often failed to cite legal authority to support his arguments, his briefing was such that we could discern his legal arguments and [the appellee] could reply to them.' " (alterations in original) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004))).

of his ex parte communication with jurors after the end of the first trial.[39] Patterson recognizes that this issue has already been decided on appeal and alleges that the judge committed "corrupted acts" and continued to display "racial hate" against him.

In our previous opinion, we addressed Patterson's "claims that the trial judge displayed 'racial hate' for Patterson," that the "judge was involved in a 'conspiracy' with counsel for Ford," that the judge was biased, and that the judge's "participation in the trial created the appearance of bias" and "the appearance of impropriety."[40] We concluded that "requiring a judge to recuse himself merely because one party has made extreme and baseless accusations against that judge would make it easy for a persistent litigant to secure a recusal that would not otherwise be required" and that "to require recusal under these circumstances would be to reward 'intemperate and unfounded behavior.' "[41] Therefore, we held that recusal was not required.[42] Now in his second appeal, Patterson continues to make the same "extreme and baseless accusations," failing to substantiate his claims and providing no persuasive reason why the judge should have been required to recuse himself. Again we determine Patterson's claim to be without merit and hold that the judge did not abuse his discretion in deciding not to recuse himself from Patterson's case.[43]

---

[39]    The record shows that upon excusing the jurors after the first trial, the judge told them that he would "be back in the jury room in about a minute or so" to field questions and comments. Such contact between the judge and former jurors is not improper.

[40]    *Patterson v. Cox*, 323 P.3d 1118, 1123 (Alaska 2014).

[41]    *Id.*

[42]    *Id.*

[43]    *See id.* at 1122 ("A judge's conclusion that he is capable of conducting a fair
(continued...)

22.    Patterson's claim regarding attorney's fees is that the judge erred by awarding attorney fees and costs to Cox and Ford for what Patterson terms "a corrupt trial and verdict."[44] He does not argue that anything is erroneous about the award itself. Instead he argues only that it was not permissible to grant the award for a trial that was corrupt. But he has not shown the trial and verdict to be "corrupt" and merely reiterates such claims as "jury tampering" and "falsifying documents," which have already been repudiated. Thus, his claim is without merit.

23.    We AFFIRM the superior court's judgment.

---

[43]    (...continued)
trial is reviewed for abuse of discretion.").

[44]    The superior court's determination about "which party is the prevailing party," as well as its "award of enhanced attorney's fees," is reviewed for abuse of discretion. *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001) (first citing *Andrus v. Lena*, 975 P.2d 54, 58 (Alaska 1999); then citing *Cole v. Bartels*, 4 P.3d 956, 958 (Alaska 2000)).